**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

THOMAS BASTIAN,

    Plaintiff,

    v.                              Civ. No. 22-605 MIS/KK

KRYSTAL RIVERA, *et al.*,

    Defendants.

**MAGISTRATE JUDGE'S PROPOSED FINDINGS
AND RECOMMENDED DISPOSITION**

Plaintiff Thomas Bastian is a prisoner serving a life sentence imposed in Arizona in 2008. *State v. Bastian*, 2011 WL 1204775, at *1, *3 (Ariz. Ct. App. Mar. 31, 2011). In his *pro se* Complaint for Violation of Civil Rights (Doc. 1) ("Complaint"), Plaintiff alleges that he served part of his sentence in the custody of the New Mexico Corrections Department ("NMCD").[1] (*Id.* at 12.) He further alleges that, from September to December 2020, NMCD employees unlawfully mistreated and retaliated against him after he said he wanted to stop cooperating with an internal investigation. (*Id.* at 11-31.) On this basis, Plaintiff asserts claims under 42 U.S.C. § 1983, the First, Eighth, and Fourteenth Amendments, and state tort law against the NMCD and 23 current or former NMCD employees (collectively, "NMCD Defendants"), as well as Wexford Health Sources, Inc. and a "John/Jane Doe Nurse." (*Id.* at 2-31.)

On June 20, 2023, the NMCD and 20 current or former NMCD employees (collectively, "Movants") filed a Partial Motion to Dismiss Complaint for Violation of Civil Rights and for

---

[1] According to his Complaint, Plaintiff was transferred to the NMCD's custody pursuant to the Western Interstate Corrections Compact. (Doc. 1 at 12.)

Qualified Immunity (Doc. 50) ("Motion").[2] Plaintiff has not responded to the Motion and the deadline for doing so has long since expired. (Doc. 86.)

By an Order of Reference filed on April 11, 2023, the Court referred this matter to me to conduct hearings as warranted, and to perform any legal analysis required to recommend an ultimate disposition of the case. (Doc. 10.) Having meticulously reviewed the parties' submissions and the relevant law, and being otherwise sufficiently advised, I recommend that Movants' Motion be GRANTED IN PART and DENIED IN PART as set forth below.

## I. BACKGROUND

### A. Factual Background

In considering Movants' Motion, I assume the truth of the following facts, which are drawn from Plaintiff's Complaint.[3] In 2020, while incarcerated at the Guadalupe County Correctional Facility ("GCCF"),[4] Plaintiff told Lieutenant D. Santistevan that Officer C. Hamilton was engaging in illegal conduct at the facility. (Doc. 1 at 13.) Lieutenant Santistevan told Plaintiff that he had a "vendetta" not only against Officer Hamilton, but also against Defendant Heather

---

[2] Movants are the NMCD and Defendants Rivera, Tafoya Lucero, Hatch, Montoya, Jaramillo, Martin, Newton, Baker, Madrid, Garza, Frazier, Angel, Martinez, Trujillo, Hernandez, Bean, Bittinger, Cryer, J. McGehee, and A. McGehee. (Doc. 50 at 1 n.1.) The non-movant Defendants are Wexford Health Sources, the Doe nurse, and current or former NMCD employees Boyd, Jackson, and Mize. (*See* Doc. 1 at 2.) Defendants Boyd, Jackson, and Mize have not been served or entered an appearance in this action, and Movants have filed a Statement Noting Death as to Defendant Mize. (Doc. 52.) Notwithstanding the non-movant status of Defendants Boyd, Jackson, and Mize, the reasoning in Sections IV.A. through E., G., and H., below, applies with equal force to the claims against them. To promote judicial economy, I recommend that the claims addressed in these Sections be disposed of as recommended with respect to all of the NMCD Defendants, including Defendants Boyd, Jackson, and Mize.

[3] Because Movants bring their Motion under Federal Rule of Civil Procedure 12(b)(6), I analyze it based on the allegations in the Complaint, except as otherwise noted. *See Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994) ("[A] Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."). I accept as true all well-pled factual allegations and view them in the light most favorable to Plaintiff for purposes of analyzing the Motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013). However, legal conclusions couched as factual allegations are not entitled to a presumption of truth. *Iqbal,* 556 U.S. at 678.

[4] The GCCF is a NMCD facility located in Santa Rosa, New Mexico. https://www.cd.nm.gov/divisions/adult-prisons/nmcd-prison-facilities/guadalupe-county-correctional-facility/ (last accessed Jul. 30, 2024).

Jaramillo, who was Officer Hamilton's "best friend" and a captain at the Northeast New Mexico Correctional Facility ("NENMCF").[5] (*Id.* at 6, 13.) Lieutenant Santistevan promised items and favors if Plaintiff would help him investigate Officer Hamilton. (*Id.* at 13.)

"At some point," Officer Hamilton learned that Plaintiff was helping Lieutenant Santistevan investigate him. (*Id.*) Officer Hamilton told Plaintiff that his friend Defendant Jaramillo hated Lieutenant Santistevan and would "do anything for [P]laintiff" if he told investigators it was really Lieutenant Santistevan who was engaging in illegal conduct. (*Id.* at 14.) Plaintiff agreed to talk secretly with Defendant Jaramillo by telephone. (*Id.*) Defendant Jaramillo told Plaintiff he would get special treatment if he cooperated with her but would be harmed if he did not. (*Id.* at 15.) In the ensuing weeks, Plaintiff cooperated with Defendant Jaramillo's investigation of Lieutenant Santistevan. (*Id.* at 15-16.) In exchange, in August 2020, he was transferred to the honor pod at the NENMCF. (*Id.*)

On September 1, 2020, Plaintiff told Defendant Jaramillo that he no longer wanted to be involved in the feud between her and Lieutenant Santistevan. (*Id.* at 16, 27.) Defendant Jaramillo became visibly angry and told Plaintiff to "be prepared for her to drop the hammer." (*Id.* at 16.) She further told Plaintiff that he could expect everyone at the NENMCF "to work with her in shutting [P]laintiff up and getting [him] shipped out of NMCD so [he] couldn't reveal his interactions with [D]efendant Jaramillo and [Officer] Hamilton to anyone outside of [the] NENMCF." (*Id.*)

On September 2, 2020, Plaintiff was moved from the honor pod to the restrictive housing unit at the NENMCF. (*Id.* at 17, 26.) In the course of the move, Defendants Cheyenne Garza and

---

[5] The NENMCF is a NMCD facility located near Clayton, New Mexico. https://www.cd.nm.gov/divisions/adult-prisons/nmcd-prison-facilities/northeast-new-mexico-correctional-facility/ (last accessed Jul. 30, 2024).

Bryan Newton intentionally destroyed some of his personal property.[6] (*Id.*) Defendant Garza also filed a false disciplinary report against Plaintiff, allowing him to use the telephone and then reporting him for using it, telling him she was doing so because he "pissed off" Defendant Jaramillo. (*Id.* at 27.) Later that day Defendant Garza filed another false disciplinary report, this time claiming that Plaintiff had threatened and chased her. (*Id.*) Defendant Newton supported the latter report with a false statement. (*Id.*)

Also on September 2, 2020, Defendants Garza and Newton intentionally destroyed all of Plaintiff's catheters, which he needed to void his bladder. (*Id.* at 17.) Over the next 53 hours, Defendants Garza, Newton, Jaramillo, Sean Martinez, Timothy Hernandez, and Mike Martin withheld medical supplies Plaintiff needed to empty his bladder, causing him extreme pain.[7] (*Id.* at 17–19.) Even after he was finally given the needed supplies, Plaintiff continued to be in severe pain and requested emergency medical care, but Defendants Jaramillo and Martin denied it. (*Id.* at 19.) Plaintiff eventually lost consciousness and had to be carried to the medical unit. (*Id.*) Once there, Defendants Hernandez and Christian Trujillo refused to remove his handcuffs, which prevented the nurse from helping him for over an hour.[8] (*Id.* at 20.) Plaintiff was vomiting uncontrollably, "required an I.V. [and] antibiotic injections, was bleeding internally, and was admitted into medical where [he] remained for six full days." (*Id.* at 19.)

On September 10, 2020, Plaintiff's fiancée e-mailed Defendant Jaramillo, threatening to "expose what [D]efendant Jaramillo … [was] doing" to Plaintiff. (*Id.* at 30.) In response, Defendant Jaramillo brought Plaintiff to her office and "screamed" at him about the e-mail. (*Id.*)

---

[6] Defendant Garza was a sergeant, and Defendant Newton a corrections officer, at the NENMCF. (Doc. 1 at 7-8.)

[7] Defendant Martinez was a sergeant, Defendant Hernandez a sergeant or lieutenant, and Defendant Martin a unit manager, at the NENMCF. (Doc. 1 at 6-8.)

[8] Defendant Trujillo was a lieutenant at the NENMCF. (Doc. 1 at 6.)

Later that month, Defendants Jaramillo and Timothy Hatch banned all visits between Plaintiff and his fiancée without due process.[9] (*Id.*)

On September 25, 2020—a Friday—Defendants Jaramillo, Hatch, Trujillo, and Matthew Montoya put Plaintiff in a cell with no working water.[10] (*Id.* at 20.) An unidentified officer told Plaintiff that Defendants Jaramillo and Montoya did not want him to have any water until the following Monday. (*Id.*) Plaintiff alerted Defendant Ryan Boyd to the problem and his medical need for water, but Defendant Boyd refused to help.[11] (*Id.* at 20–21.) The next day, Plaintiff told Defendant Jose Angel that he needed water, but Defendant Angel refused to provide any and suggested he drink from the toilet.[12] (*Id.* at 21.) Plaintiff became extremely dehydrated and experienced "bad kidney pain, numbness in his fingers and toes, blurred vision, terrible headaches, and swelling in his legs." (*Id.*)

On September 27, 2020, Plaintiff told Defendant Martinez that he had not had any water for two days and needed medical attention for extreme dehydration and kidney pain. (*Id.*) Hours later, Defendant Martinez verified that the water in Plaintiff's cell was not working but still did not provide any. (*Id.*) In response to a nurse's request, Defendants Martinez and Joseph McGehee said that they would move Plaintiff to a cell with water but they did not do so that day.[13] (*Id.* at 22.) Finally, on September 28, 2020, Defendant Martinez moved Plaintiff to a cell with working water and then to the medical unit, where he was treated with medication injected into his kidneys

---

[9] Defendant Hatch was the warden at the NENMCF. (Doc. 1 at 5.)

[10] Defendant Montoya was a major at the NENMCF. (Doc. 1 at 5.)

[11] Defendant Boyd was a corrections officer at the NENMCF. (Doc. 1 at 8.)

[12] Defendant Angel was a corrections officer at the NENMCF. (Doc. 1 at 9.)

[13] Defendant J. McGehee was a lieutenant at the NENMCF. (Doc. 1 at 7.)

and "multiple bags of I.V. solution." (*Id*. at 22–23.)

On September 29, 2020, Defendant J. McGehee filed a false disciplinary report, supported by Defendants Martinez, Montoya, Boyd, Hatch, Krystal Rivera, James Mize, Cecilia Baker, and David Jackson, blaming Plaintiff for the lack of water in his cell.[14] (*Id.* at 28.) On September 30, 2020, Defendant Eva Cryer filed a false disciplinary report against Plaintiff to cover up what had happened.[15] (*Id.*) On the same day, Defendant Trujillo, at Defendant Jaramillo's direction, intentionally destroyed more of Plaintiff's personal property. (*Id*. at 26.) Later that night, Plaintiff, who is asthmatic, "went into resp[ira]tory distress and was struggling to breathe." (*Id*. at 23.) He told Defendant Boyd that he had run out of asthma medication, but Defendant Boyd refused to call for medical care. (*Id*.) Plaintiff remained in a state of respiratory distress for over eight hours. (*Id.*)

On October 1, 2020, Defendant Trujillo told another inmate that Plaintiff was a "rat," causing other inmates to threaten Plaintiff. (*Id.* at 29.) On October 7, 2020, Defendant Jaramillo filed a false disciplinary report against Plaintiff, supported by Defendant Trujillo. (*Id.* at 28.)

On October 11, 2020, Plaintiff told Defendant Boyd that he did not have a catheter, could not urinate, and needed medical care. (*Id*. at 23.) Defendant Boyd refused to help. (*Id*.) The following day, Plaintiff told Defendant Martinez that he had been unable to urinate for over a day, needed medical help, and was in terrible pain. (*Id*.) Plaintiff had to ask Defendant Martinez five separate times to notify the medical unit of his need for help. (*Id*.)

On October 13, 2020, Plaintiff notified Defendants Rivera, Hatch, Phyl Bean, Steve

---

[14] Defendant Rivera was a disciplinary/grievance coordinator at the Central New Mexico Correctional Facility. (Doc. 1 at 3.) Defendant Mize was a physical plant supervisor, Defendant Baker a unit manager, and Defendant Jackson a sergeant at the NENMCF. (*Id.* at 8-9.)

[15] Defendant Cryer was a case manager at the NENMCF. (Doc. 1 at 6.)

Madrid, and Alisha Tafoya Lucero that he was being prevented from filing grievances.[16] (*Id.* at 25.) The next day, Defendant Alexa McGehee filed a false disciplinary report against Plaintiff because he had threatened to file a grievance against Defendant J. McGehee.[17] (*Id.* at 28.) In October 2020, Defendants Jaramillo and Hatch banned all mail between Plaintiff and his fiancée without due process. (*Id.* at 30.)

On November 2, 2020, Defendant Jaramillo filed a retaliatory false disciplinary report against Plaintiff, supported by Defendant Montoya. (*Id.* at 28.) On the same date, Defendant Jaramillo asked Plaintiff to "snitch" in front of other inmates. (*Id.* at 29.) On November 5, 2020, Defendant Boyd, at the direction of Defendants Rivera, Jaramillo, and Montoya, filed a false disciplinary report against Plaintiff to cover up his having been deprived of water. (*Id.* at 28.) Several times in November and December 2020, Defendant Angel called Plaintiff a "snitch" in front of other inmates. (*Id.*at 29.)

Plaintiff filed about 40 informal complaints and formal grievances against Defendants, but he was returned to the Arizona Department of Corrections, Rehabilitation and Recovery ("ADCRR") before he received a response to them. (*Id*. at 25, 30.) Defendants Rivera, Jaramillo, Montoya, Martin, Bean, Baker, Tafoya Lucero, Hatch, Madrid, Trujillo, Teresa Bittinger, and Cheryl Frazier conspired to deny having received, and delay responding to, Plaintiff's grievances until he left NMCD's custody, to prevent him from fully exhausting his institutional remedies.[18] (*Id.*) Defendants Martin and Rivera told Plaintiff that they and Defendants Jaramillo, Hatch,

---

[16] Defendant Bean was a disciplinary hearing officer at the NENMCF; Defendant Madrid was the statewide grievance appeal officer; and, Defendant Tafoya Lucero was the NMCD Cabinet Secretary. (Doc. 1 at 4-5, 9.)

[17] Defendant A. McGehee was a telemonitor at the NENMCF. (Doc. 1 at 7.)

[18] Defendant Bittinger was an associate deputy warden and Defendant Frazier an "admin" at the NENMCF. (Doc. 1 at 5, 10.)

Bittinger, and Montoya had "agreed to do all they can to stop [him] from filing complaints against them." (*Id*. at 25.) Plaintiff "eventually stopped pursuing redress." (*Id*.)

Defendants Rivera, Bean, Trujillo, Hatch, and Bittinger conspired to deny Plaintiff due process during disciplinary hearings. (*Id.* at 30.) They violated "due process time frames," found Plaintiff guilty without supportive evidence, refused to allow Plaintiff to submit questions to witnesses, and failed to give him a fair hearing before an impartial decisionmaker. (*Id.*)

"Defendants Rivera, Bean, and Trujillo acted as Disciplinary coordinators and Hearing Officers." (*Id.* at 29.) Plaintiff had filed seven complaints against Defendant Rivera, who is Defendant Jaramillo's sister. (*Id.*) Defendant Rivera told Plaintiff that "she doesn't really care what the evidence says, as far as she's concerned [P]laintiff is guilty." (*Id.*) Plaintiff had a pending request for outside investigation of Defendant Bean while she was acting as a hearing officer "in [P]laintiff's false disciplinary reports." (*Id.*) Defendant Bean told Plaintiff that she was "rubber stamping guilty on any reports that cross her desk" because she was tired of him grieving and appealing everything. (*Id.*) Plaintiff had filed "multiple institutional and external complaints" against Defendant Trujillo when Defendant Trujillo served as "disciplinary coordinator" at a disciplinary hearing against Plaintiff. (*Id.*) As deputy warden, Defendant Bittinger "knowingly approved findings of guilt and sanctions against [P]laintiff prior to [P]laintiff ever having a hearing." (*Id.*)

Plaintiff notified Defendant Tafoya Lucero of the other Defendants' misconduct by sending her notifications, notices of claims, requests for investigations, and requests for preservation of evidence via certified mail. (*Id*. at 24-25, 30-31.) However, Defendant Tafoya Lucero did not take any "corrective action." (*Id*.)

## B. Procedural Background

On August 15, 2022, Plaintiff filed this lawsuit against the NMCD Defendants, Wexford

Health Sources, Inc., and a Doe nurse. (*Id.* at 1-10.) Movants filed their Motion to Dismiss on June 20, 2023. (Doc. 50.) On July 18, 2023, the Court granted Movants' Motion to Stay on the Basis of Qualified Immunity. (Doc. 71.) The Court also granted Plaintiff three extensions of time to respond to Movants' Motion to Dismiss, ultimately extending the time for Plaintiff to respond to October 10, 2023. (Docs. 62, 80, 86.) However, to date, Plaintiff has not filed a response. From the time he filed his Complaint to the present, Plaintiff has been incarcerated at an ADCRR facility in Florence, Arizona. (Doc. 1 at 3; Doc. 88 at 1.)

## II. PLAINTIFF'S CLAIMS AND PRAYER FOR RELIEF

In his Complaint, Plaintiff brings the following enumerated claims:

Claim One:      "Cruel & Unusual Punishment In Violation of the Eighth Amendment";

Claim Two:      "Negligence";

Claim Three:  "Duty to Care";

Claim Four:    "Gross Negligence";

Claim Five:    "Denial of Free Speech and Right to Petition for Redress of Grievances in Violation of First Amendment";

Claim Six:      "Negligence";

Claim Seven:  "Retaliation in Violation of the First Amendment"[19]; and,

Claim Eight:  "Denial of Due Process in Violation of the Fourteenth Amendment."

(Doc. 1 at 17-31.)[20]

Plaintiff sues the individual Defendants in their individual and official capacities. (*Id.* at 3–

---

[19] In Claim Seven, Plaintiff incorporates by reference all of the facts supporting his previous six claims. (Doc. 1 at 26.) He also adds new allegations under three subheadings: (a) "Retaliatory False Disciplinary," (b) "Retaliatory Threats to Personal Safety," and (c) "Retaliatory Denial of Due Process." (*Id.* at 27-31.) As discussed in Section IV.D., below, the only part of Claim Seven that Movants ask the Court to dismiss is the section entitled "Retaliatory Denial of Due Process." (Doc. 50 at 15.)

[20] Plaintiff also alleges that Defendants committed "Infliction of Emotional Distress" and "Abuse of Power." (Doc. 1 at 4.) However, he does not number these allegations as claims, and he does not indicate who committed the alleged misconduct or how. (*Id.*) Thus, it does not appear that he intends to assert these allegations as independent claims. However, to the extent he does, the claims should be dismissed without prejudice because they do not provide any Defendant with fair notice of the claims against him or her and the grounds on which they rest. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

10.) In addition to the specific actions described above, he alleges that Defendants Tafoya Lucero, Rivera, Jaramillo, Martin, Bittinger, Montoya, Baker, Bean, Frazier, Hatch, and Madrid had a "policy and practice" of allowing retaliation against Plaintiff and that Defendant Tafoya Lucero failed to train and supervise her subordinates. (*See, e.g., id*. at 23–25, 31.) He also alleges that the individual NMCD Defendants conspired to retaliate against him. (*See, e.g., id*. at 16, 25, 27.)

Plaintiff seeks compensatory and punitive damages from Defendants. (*Id*. at 32.) He also requests an order declaring that their acts and omissions violated his rights and stating their duties with respect to those rights. (*Id*. at 12.) Finally, he prays for injunctive relief in the form of an order invalidating "NMCD Policies CD-150500 'Inmate Grievances' and CD-090100 'Inmate Disciplinary.'" (*Id*. at 12, 32.)

### III.  LEGAL STANDARDS

Under Federal Rule of Civil Procedure 8, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Rather, the required statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (ellipses omitted).

Federal Rule of Civil Procedure 12(b)(6) authorizes courts to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion to dismiss under Rule 12(b)(6), courts must determine whether the plaintiff's complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). In undertaking this analysis, courts consider "the complaint as a whole, along with the documents incorporated by reference

into the complaint[,]" and construe all well-pled factual allegations "in the light most favorable to the plaintiff." *Nakkhumpun v. Taylor*, 782 F.3d 1142, 1146 (10th Cir. 2015). Allegations are "well-pled" when they are "plausible, non-conclusory, and non-speculative." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678, and courts will disregard such statements, looking "only to whether the remaining[] factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). Courts do not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated the [law] in ways that have not been alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

The defense of qualified immunity generally shields "government officials performing discretionary functions … from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This defense "is available only to defendants sued in their individual capacities." *Langley v. Adams Cnty., Colo.*, 987 F.2d 1473, 1477 (10th Cir. 1993). For a claim to survive a motion to dismiss on the basis of qualified immunity, (1) the facts the plaintiff has alleged must make out a violation of a constitutional or statutory right, and (2) the right at issue must have been clearly established at the time of the defendant's alleged misconduct. *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011); *Leverington v. City of Colorado Springs*, 643 F.3d 719, 732 (10th Cir. 2011). Courts have discretion to consider the two prongs of this test in any order. *Brown*, 662 F.3d at 1164. "[I]f the

plaintiff fail[s] to state a claim under Rule 12(b)(6), the government [official will] also be entitled to qualified immunity." *Montoya v. Vigil*, 898 F.3d 1056, 1064 (10th Cir. 2018).

The pleadings of a *pro se* plaintiff are "construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Courts "make some allowances for the pro se plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements[.]" *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quotation marks and brackets omitted). Also, a *pro se* plaintiff "whose factual allegations are close to stating a claim but are missing some important element that may not have occurred to him, should be allowed to amend his complaint." *Hall*, 935 F.2d at 1110.

However, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.* Thus, courts cannot "supply additional factual allegations to round out a [*pro se*] plaintiff's complaint or construct a legal theory on [his] behalf." *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009). Furthermore, the *pro se* plaintiff needs "no special legal training to recount the facts surrounding his alleged injury," and so, as with any other plaintiff, his "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall*, 935 F.2d at 1110. Finally, *pro se* parties must "follow the same rules of procedure that govern other litigants." *Garrett*, 425 F.3d at 840.

Under this Court's Local Rules, "[t]he failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion." D.N.M.LR–Civ. 7.1(b). Nevertheless, the Court cannot grant a motion to dismiss based solely on a plaintiff's failure to respond and "must still examine the allegations in the plaintiff's complaint and determine whether the plaintiff has stated a claim upon which relief can be granted."

*Issa v. Comp USA*, 354 F.3d 1174, 1177–78 (10th Cir. 2003).

## IV. DISCUSSION

In their Motion, Movants argue that the Court should dismiss the federal constitutional claims asserted in Claim Five, the "Retaliatory Due Process" section of Claim Seven,[21] and Claim Eight of Plaintiff's Complaint, because Plaintiff has failed to state a claim and the individual NMCD Defendants in their individual capacities are entitled to qualified immunity. (Doc. 50 at 4.) Movants further argue that the Court should dismiss Claims Two, Three, Four, and Six, which assert state tort claims. (*Id.*)

In addition, Movants argue that the Court should dismiss Plaintiff's Section 1983 claims against the NMCD and the individual NMCD Defendants in their official capacity, and that Defendants Tafoya Lucero, Madrid, Frazier, Bean, and Baker are entitled to dismissal of and qualified immunity from all of Plaintiff's claims against them, as is Defendant Hatch in part. (*Id.*) Finally, Movants seek dismissal of Plaintiff's claims for injunctive and declaratory relief as moot. (*Id.*) I recommend that the Court GRANT Movants' Motion in part and DENY it in part as described below.

### A. Claim Five ("Denial of Free Speech and Right to Petition for Redress of Grievances in Violation of First Amendment")

Movants first argue that the Court should dismiss Claim Five of Plaintiff's Complaint for failure to state a claim and because the individual NMCD Defendants in their individual capacities are entitled to qualified immunity. (Doc. 50 at 7-11.) In Claim Five, Plaintiff claims that NMCD Defendants violated his First Amendment rights by denying having received his grievances and failing to issue timely responses. (Doc. 1 at 25.) Plaintiff further claims that NMCD Defendants

---

[21] This section of Claim Seven is actually entitled "Retaliatory Denial of Due Process," (Doc. 1 at 30), but I use Movants' shorter designation for the sake of brevity.

created and conspired to implement an unconstitutional policy and practice of denying having received his grievances and delaying responses to them. (*Id.*) In support, Plaintiff alleges that he filed about 40 informal complaints and formal grievances, but Defendants denied him "the ability to file grievances pertaining to grievable matters" more than 17 times "without valid justification." (*Id.*) As a result, he eventually stopped pursuing grievances. (*Id.*)

Even assuming these broad and conclusory allegations are true, Plaintiff has nevertheless failed to state a claim in Claim Five because there is no First Amendment right to effective or accessible prison grievance procedures. *Von Hallcy v. Clements*, 519 F. App'x 521, 523 (10th Cir. 2013); *Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011).[22] "Instead, when the claim underlying the administrative grievance involves a constitutional right, the prisoner's [First Amendment] right to petition the government for redress is the right of access to the courts." *Boyd*, 443 F. App'x at 332 (quotation marks and brackets omitted). And the right of access to the courts "is not compromised by the prison's refusal to entertain his grievance." *Id.*

Here, it is plain that Plaintiff "has not been deprived of access to the courts," because he has filed and pursued this lawsuit. *Walters v. Corr. Corp. of Am.*, 119 F. App'x 190, 191 (10th Cir. 2004). "Accordingly, any alleged denial of access to state administrative grievance procedures has not resulted in a violation of his constitutional rights." *Id.*; *see also Sawyer v. Green*, 316 F. App'x 715, 717 n.3 (10th Cir. 2008) (stating that "lack of response to … grievances [does not] constitute[] a constitutional violation" and that "[p]rocedurally, nothing more is required than [the plaintiff's] ability to raise [his] constitutional claims in the courts, which he obviously has done here by filing a § 1983 complaint").

The Prison Litigation Reform Act's ("PLRA") exhaustion requirement does not change

---

[22] In the Tenth Circuit, unpublished decisions are not binding precedent but may be cited for their persuasive value. *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005).

this analysis. In pertinent part, the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). But "[w]here prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust." *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010). Thus, while Plaintiff may try to counter a failure-to-exhaust defense by showing that Defendants obstructed his grievances, he cannot state a First Amendment claim of denial of access to the courts based on such obstruction because, if it occurred, his failure to exhaust will be excused. *Burnett v. Allbaugh*, 715 F. App'x 848, 850-52 (10th Cir. 2017). Claim Five should be dismissed for failure to state a claim.

In addition, the individual NMCD Defendants in their individual capacities are entitled to qualified immunity from Claim Five. Plaintiff has failed to satisfy the first prong of the qualified immunity test because, as just discussed, he has not alleged the deprivation of a constitutional right. *Leverington*, 643 F.3d at 732. And even if he had, he has failed to satisfy the test's second prong because he has not shown that the right at issue was clearly established at the relevant times. *Id.* For all of these reasons, Claim Five should be dismissed. Further, the dismissal should be with prejudice because "it is obvious that [P]laintiff cannot prevail on the facts [he] has alleged and it would be futile to give [him] an opportunity to amend." *Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014).

## B. Claims Two, Three, and Four ("Negligence," "Duty to Care," and "Gross Negligence")

Movants ask the Court to dismiss Claims Two, Three, and Four on the basis of Eleventh Amendment immunity. (Doc. 50 at 11-12.) Claims Two, Three, and Four are called "Negligence,"

"Duty to Care," and "Gross Negligence," respectively. (Doc. 1 at 24.) To support these Claims, Plaintiff incorporates the facts he alleges in support of Claim One, *i.e.*, his Eighth Amendment claims arising out of Defendants' alleged failure or refusal to provide him with adequate medical care and water.[23] (*Id*. at 17-24.) It thus appears that Plaintiff is asserting state tort claims based on this same conduct.

The Eleventh Amendment "bars damages actions against a state in federal court, even by its own citizens, unless the state waives that immunity." *Sturdevant v. Paulsen*, 218 F.3d 1160, 1164 (10th Cir. 2000). When Eleventh Amendment immunity applies, federal courts lack jurisdiction over the subject claims, which must be dismissed without prejudice. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006); *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002); *Wyoming v. United States*, 279 F.3d 1214, 1225 (10th Cir. 2002).

"An arm of the state may … assert the Eleventh Amendment as a defense in federal court." *McLaughlin v. Bd. of Trustees of State Colleges of Colorado*, 215 F.3d 1168, 1170 (10th Cir. 2000) (quotation marks omitted). "[T]he arm-of-the-state doctrine bestows immunity on entities created by state governments that operate as alter egos or instrumentalities of the states." *Sturdevant*, 218 F.3d at 1164. Likewise, suits against state officials in their official capacity are "treated as suits against the State" for purposes of Eleventh Amendment immunity. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). In other words, the Eleventh Amendment "generally bars lawsuits in federal court seeking damages against states" and "state agencies, departments, and employees acting in their official capacity." *Bishop v. John Doe 1*, 902 F.2d 809, 810 (10th Cir. 1990).

A state "may waive its [E]leventh [A]mendment immunity and consent to suit against

---

[23] Movants have not moved to dismiss the Eighth Amendment claims asserted in Claim One and I do not address their viability here. (*See generally* Doc. 50.)

itself, related entities and employees." *Id.* In the New Mexico Tort Claims Act ("NMTCA"), the State of New Mexico "has consented to suits against its entities and employees acting within the scope of their duty" for some torts. *Id.* (citing N.M. Stat. Ann. §§ 41-4-4, 41-4-6). Critically, however, "that consent is limited to actions commenced in the state district courts." *Id.*; *see* N.M. Stat. Ann. § 41-4-18(A) ("Exclusive original jurisdiction for any claim under the [NMTCA] shall be in the district courts of New Mexico."). In other words, the NMTCA does *not* waive New Mexico's Eleventh Amendment immunity from state tort claims brought in federal court. *Bishop*, 902 F.2d at 810.

The NMCD is an arm of the State of New Mexico. *Jordan v. Doe*, 15 F. App'x 564, 565 (10th Cir. 2001); *Blackburn v. Dep't of Corr.*, 172 F.3d 62, at *1 (10th Cir. 1999). Thus, it shares in the state's Eleventh Amendment immunity; and, because the NMTCA does not waive that immunity, it is generally immune from state tort claims brought in federal court. *Bishop*, 902 F.2d at 810; *Blackburn*, 172 F.3d 62, at *1. Further, the Tenth Circuit has held that the Eleventh Amendment bars state tort claims not only against the NMCD, but also against NMCD employees acting within the scope of their duties, to the extent these claims are brought in federal court. *Bishop*, 902 F.2d at 810; *see also Trujillo*, 2023 WL 5748778, at *5-*6; *Curry*, 2021 WL 4430264, at *1-*3; *Ramirez*, 2021 WL 1294909, at *1-*3.

Here, Claims Two through Four assert state tort claims against the NMCD and its employees acting within the scope of their duties. (*See generally* Doc. 1 at 17-24.) Thus, the Eleventh Amendment bars Plaintiff from bringing these claims in federal court. *Bishop*, 902 F.2d at 810. Rather, these claims are "relegated to the state district court," where Plaintiff may "seek relief consistent with the limited waiver of immunity under § 41-4-18." *Id.* As Movants argue, this Court lacks jurisdiction to hear these claims and they should be dismissed without prejudice.

*Brereton*, 434 F.3d at 1218; *Ruiz*, 299 F.3d at 1180; *Wyoming*, 279 F.3d at 1225.

Movants alternatively argue that they are immune from Claims Two through Four in any venue because Plaintiff has not identified an applicable enumerated waiver of immunity under the NMTCA. (Doc. 50 at 12-14.) In pertinent part, the NMTCA provides that "[a] governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived by … Sections 41-4-5 through 41-4-12" of the Act. N.M. Stat. Ann. § 41-4-4(A). Movants are correct that Plaintiff does not refer to any of the waivers in Sections 41-4-5 through 41-4-12 in his Complaint. (*See generally* Doc. 1.) And because he has not responded to Movants' Motion, he has not identified any applicable waivers in briefing, either.

Moreover, I have reviewed the waivers in Sections 41-4-5 to 41-4-12 of the Act and see none that apply to the parts of Claims Two through Four alleging failure or refusal to provide adequate medical care. Section 41-4-6 does waive immunity for the negligent "operation or maintenance" of a public facility. N.M. Stat. Ann. § 41-4-6(A). However, for the negligent "operation" prong of this waiver to apply, the challenged conduct must relate to "a class of building users" rather than "a single individual." *Compare Tanner v. McMurray*, 2018 WL 6050675, at *46 (D.N.M. Nov. 19, 2018) (holding that plaintiff's claim did not fall within Section 41-4-6 where defendant's alleged delayed response to plaintiff's request for medical help did "not endanger more than a single individual"), *with Rave v. Bd. of Comm'rs for Cnty. of Bernalillo*, 2017 WL 3600452, at *10 (D.N.M. Aug. 18, 2017) (finding that plaintiff's claim fell within Section 41-4-6 where his "allegations relate[d] to a class of building users—incarcerated inmates with medical issues") (quotation marks omitted). And here, accepting Plaintiff's allegations as true, the NMCD Defendants' provision of inadequate medical care related only to him, because it was motivated by his particular words and actions. (Doc. 1 at 17-24.)

Likewise, Section 41-4-12 does waive law enforcement officers' immunity from liability for conduct that causes certain intentional torts. N.M. Stat. Ann. § 41-4-12. And notwithstanding Movants' argument to the contrary, the applicable version of Section 41-4-12 does encompass corrections officers, because effective September 20, 2020, it was amended to include as "law enforcement officers" public officers or employees vested with the power to detain persons "convicted" of committing a crime, as well as persons "suspected" of doing so. N.M. Stat. Ann. § 41-4-12; *Bradshaw v. Mgmt. & Training Corp.*, 2023 WL 5934397, at *13 (D.N.M. Sept. 12, 2023). That amendment applies here because, "[p]ursuant to [*Methola v. Eddy County*, 1980-NMSC-145, ¶ 14, 622 P.2d 234, 236-37], the applicable version of Section 41-4-12 is the one which was in effect when this suit became pending" in August 2022. *Bradshaw*, 2023 WL 5934397, at *13 & n.5.

Nevertheless, Section 41-4-12 does not waive the NMCD Defendants' immunity from Claims Two through Four to the extent these claims arise out of the alleged provision of inadequate medical care to Plaintiff, for two reasons. First, with one exception, the challenged conduct plainly does not implicate any of the intentional torts enumerated in this waiver, and the exception is not legally cognizable. Specifically, though Section 41-4-12 does waive corrections officers' immunity from liability for the intentional deprivation of federal constitutional rights, it is not at all clear that Plaintiff intends to bring state tort claims, as opposed to Section 1983 claims, for the deprivations he alleges in Claim One. And even if he did, the state tort claims would not be legally cognizable here because they are wholly redundant of his Eighth Amendment claims under 42 U.S.C. § 1983. *Cf. Murphy v. Sandoval Cnty.*, 2019 WL 8881626, at *2 (D.N.M. Feb. 8, 2019).[24]

---

[24] In *Murphy*, the Court found that a stand-alone claim under Article II, Section 13 of the New Mexico Constitution was redundant of a corresponding Eighth Amendment claim. 2019 WL 8881626, at *2. Plaintiff has given no indication that he intends to assert any claims, whether stand-alone or through Section 41-4-12, for violation of his

Second, Section 41-4-12 does not apply to Plaintiff's claims that Defendant Tafoya Lucero negligently supervised and trained her subordinates, thereby causing them to violate his constitutional rights, because Defendant Tafoya Lucero is not a law enforcement officer.[25] (*See* Doc. 1 at 23-24.) As Plaintiff alleges in his Complaint, Defendant Tafoya Lucero is the NMCD Cabinet Secretary. (*Id.* at 4.) And the New Mexico Supreme Court has held that the NMCD Secretary is not a law enforcement officer within the meaning of Section 41-4-12 because her "primary duties and responsibilities … are administrative in nature." *Anchondo v. Corr. Dep't*, 1983-NMSC-051, ¶¶ 6, 14, 666 P.2d 1255, 1256, 1258.[26] For all of these reasons, neither Section 41-4-6 nor Section 41-4-12 waives NMCD Defendants' immunity from liability for Plaintiff's state tort claims alleging inadequate medical care.

Movants fail to address, however, whether NMCD Defendants' alleged acts and omissions depriving Plaintiff of adequate water "comprise[d] the 'operation' [or] 'maintenance' of penitentiary premises" for which immunity is waived under Section 41-4-6. (Doc. 50 at 13-14.) And in fact, construed in his favor, Plaintiff's allegations that he was deprived of water for days because the plumbing in his cell "was not working" do describe "a physical defect in a building" falling within the negligent "maintenance" prong of Section 41-4-6. *See generally Leithead v. City of Santa Fe*, 1997-NMCA-041, ¶ 5, 123 N.M. 353, 355, 940 P.2d 459, 461 (stating that Section 41-4-6 waives immunity for injuries caused by "a physical defect in a building").

---

state constitutional right to be free from cruel and unusual punishment under Article II, Section 13, but even if he did, these claims would also be redundant of his Eighth Amendment claims under 42 U.S.C. § 1983. *Id.*

[25] These claims are not redundant of Plaintiff's federal constitutional claims because negligent failure to train and supervise subordinates is not actionable as a constitutional violation under 42 U.S.C. § 1983. *Serna v. Colorado Dep't of Corr.*, 455 F.3d 1146, 1151–52 (10th Cir. 2006) ("'[M]ere negligence' is not enough to hold a supervisor liable under § 1983[.]").

[26] The September 2020 amendment to Section 41-4-12 did not add administrators to the definition of "law enforcement officer" and thus leaves *Anchondo*'s reasoning intact.

In sum, the Eleventh Amendment bars Plaintiff from bringing Claims Two through Four against the NMCD Defendants in federal court. *Bishop*, 902 F.2d at 810. In addition, the NMCD Defendants are immune from these claims to the extent they arise out of Defendants' alleged failure or refusal to provide Plaintiff with adequate medical care, because he has failed to identify, and there does not appear to be, an applicable enumerated NMTCA waiver for these claims. The Court lacks jurisdiction to hear Claims Two through Four and they should be dismissed without prejudice. *Brereton*, 434 F.3d at 1218; *Ruiz*, 299 F.3d at 1180; *Wyoming*, 279 F.3d at 1225.

### C.  Claim Six ("Negligence")

Movants also move for dismissal of Claim Six on the basis of Eleventh Amendment immunity. (Doc. 50 at 11-12.) The title of Claim Six is "Negligence," but the facts Plaintiff alleges in support do not describe negligent conduct. (Doc. 1 at 26.) Rather, Plaintiff affirmatively alleges that NMCD Defendants "intentionally" destroyed his personal property. (*Id.*) It thus appears that, in Claim Six, Plaintiff is asserting intentional tort claims as well as or in the alternative to negligence claims. But regardless, the Eleventh Amendment bars these claims because they, like the claims discussed in Section IV.B., *supra*, are state tort claims brought against the NMCD and its employees acting within the scope of their duties in federal court. *Bishop*, 902 F.2d at 810. The Court lacks jurisdiction to hear these claims and they should be dismissed without prejudice. *Brereton*, 434 F.3d at 1218; *Ruiz*, 299 F.3d at 1180; *Wyoming*, 279 F.3d at 1225.

Movants also argue that there is no enumerated NMTCA waiver that applies to the state tort claims asserted in Claim Six, (Doc. 50 at 12-14), but I disagree. Section 41-4-12 of the NMTCA waives immunity from, among other things, "liability for … property damage resulting from … violation of property rights … when caused by law enforcement officers while acting within the scope of their duties." N.M. Stat. Ann. § 41-4-12. And as discussed in Section IV.B., corrections officers are "law enforcement officers" under the applicable version of this waiver. *Id.*;

*Bradshaw*, 2023 WL 5934397, at \*13. Section 41-4-12 thus waives NMCD corrections officers' immunity from Plaintiff's tort claims arising out of their intentional destruction of his personal property. *See Armijo v. Vill. of Columbus*, 2011 WL 13174491, at \*10–\*11 (D.N.M. May 4, 2011) (holding that Section 41-4-12 "waive[s] immunity for conversion by law enforcement officers while acting within the scope of their duties"). In sum, Claim Six should be dismissed without prejudice on the basis of Eleventh Amendment immunity but not for lack of an applicable enumerated waiver under the NMTCA.

### D.  Plaintiff's "Retaliatory Due Process" Claims

Movants next ask the Court to dismiss the "Retaliatory Due Process" section of Claim Seven for failure to state a claim and, as to the individual NMCD Defendants in their individual capacities, on the basis of qualified immunity. (Doc. 50 at 14-19.) In this section, Plaintiff challenges NMCD Defendants' alleged (1) mishandling of his grievances, (2) mishandling of disciplinary proceedings against him, (3) ban prohibiting mail between him and his fiancée, and (4) ban prohibiting visits between him and his fiancée. (Doc. 1 at 30-31.) According to Plaintiff, these acts violated his First Amendment rights because Defendants undertook them to retaliate against him for engaging in constitutionally protected activities. (*Id.* at 26-27.) Notably, however, Plaintiff also refers to "Due Process" with respect to these claims. (*Id.* at 30-31.) It thus appears that Plaintiff seeks to bring these claims under both the First and the Fourteenth Amendments and I analyze them accordingly.

### 1.    *Mishandling of Plaintiff's Grievances*

Movants argue that the Court should dismiss Plaintiff's "Retaliatory Due Process" claims challenging NMCD Defendants' handling of his grievances because, among other things, he "has not alleged … an actionable injury." (Doc. 50 at 16.) As explained below, I agree.

To establish a First Amendment retaliation claim, a plaintiff must show that: (1) he engaged in constitutionally protected activity; (2) the defendant caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and, (3) the defendant's adverse action was substantially motivated by the plaintiff's protected activity. *Shero v. City of Grove,* 510 F.3d 1196, 1203 (10th Cir. 2007); *Rhodes v. Shannon*, 2024 WL 79964, at *3 (10th Cir. Jan. 8, 2024). For purposes of the second prong of this test, an "injury" is "an adverse consequence that the plaintiff suffers at the hands of the defendant." *Irizarry v. Yehia*, 38 F.4th 1282, 1288 n.6, 1296 (10th Cir. 2022). The standard for evaluating the "chilling effect" of such an injury "is objective, rather than subjective," and "a trivial or de minimis injury" will be inadequate to support a First Amendment retaliation claim. *Shero*, 510 F.3d at 1203.

Here, Plaintiff has not plausibly alleged that NMCD Defendants' mishandling of his grievances caused him to suffer an adverse consequence that would chill a person of ordinary firmness from continuing to engage in protected activity. *See Fogle v. Infante*, 595 F. App'x 807, 810 (10th Cir. 2014) (holding that "refusing to give a prisoner a grievance form [is] not the type of injury that would chill a person of ordinary firmness from exercising their constitutional rights"). The only adversity Plaintiff identifies in this context is that Defendants' alleged mishandling of his grievances "prevent[ed him] from being able to fully exhaust his institutional remedies so [he] could not seek judicial intervention." (Doc. 1 at 30.) But this adversity is trivial at best because, as discussed in Section IV.A., *supra*, if Defendants thwarted his efforts to avail himself of prison grievance procedures as he claims, then the Court will excuse his failure to exhaust and he will not be prevented from pursuing judicial intervention. *Little*, 607 F.3d at 1250. Thus, Plaintiff has failed to allege an actionable injury with respect to his First Amendment retaliation claims based on the mishandling of his grievances.

Plaintiff's Fourteenth Amendment due process claims based on the alleged mishandling of his grievances fare no better. To establish a due process violation, a plaintiff must first demonstrate that the defendant deprived him of a constitutionally protected liberty or property interest. *Muniz-Savage v. Addison*, 647 F. App'x 899, 904 (10th Cir. 2016) (citing *Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 569 (1972)). But the provision of prison grievance procedures "does not establish an interest protected by due process." *Burnett*, 715 F. App'x at 852; *see also Von Hallcy*, 519 F. App'x at 523 (holding that "the state's voluntary provision of an administrative grievance process" does not "create a liberty interest in that process"); *Boyd*, 443 F. App'x at 332 (same). Thus, "[a] viable due process claim cannot rest on allegations of an unfair or inadequate [prison] grievance process," *Burnett*, 715 F. App'x at 852, and Plaintiff cannot state a due process claim on that basis.

In sum, the NMCD Defendants are entitled to dismissal of Plaintiff's First and Fourteenth Amendment "Retaliatory Due Process" claims arising out of the alleged mishandling of his grievances for failure to state a claim. In addition, the individual NMCD Defendants in their individual capacities are entitled to qualified immunity from these claims, because Plaintiff has not alleged a violation of a clearly established constitutional right. *Leverington,* 643 F.3d at 732. For these reasons, and because it is obvious that granting him leave to amend would be futile, *Knight*, 749 F.3d at 1190, Plaintiff's "Retaliatory Due Process" claims arising out of NMCD Defendants' alleged mishandling of his grievances should be dismissed with prejudice.

2.      *Mishandling of Disciplinary Proceedings Against Plaintiff*[27]

---

[27] Plaintiff challenges the allegedly false and retaliatory nature of the disciplinary charges against him in a separate section of Claim Seven. (Doc. 1 at 27-29.) Movants have not moved to dismiss that section except as to Defendants Tafoya Lucero, Hatch, and Baker, and so I limit my analysis of its viability to those Defendants, as discussed in Section IV.F., *infra*.

Movants next argue that the Court should dismiss Plaintiff's "Retaliatory Due Process" claims challenging their handling of disciplinary proceedings against him for failure to state a claim. (Doc. 50 at 16-17.) Movants further argue that the individual NMCD Defendants in their individual capacities are entitled to qualified immunity from these claims because Plaintiff has not alleged a violation of a clearly established constitutional right. (*Id.*) For the following reasons, these claims should be dismissed without prejudice for failure to state a claim.

In this part of Claim Seven, Plaintiff alleges that NMCD Defendants "violat[ed] … due process time frames in each disciplinary hearing" against him, found him guilty "without supportive evidence," "refus[ed] to allow [him] to submit questions to witnesses," and failed to give him a fair hearing before an impartial decisionmaker. (Doc. 1 at 30.) Initially, in many respects, these vague and conclusory allegations do not satisfy federal pleading standards. For example, Plaintiff provides no dates or even periods of time to support the allegation that Defendants violated due process time frames.[28] (*See generally id*.) Nor does he even generally describe what evidence was presented against him or what questions he was forbidden to submit to whom. (*Id.*) In these respects, Plaintiff fails to "nudge[]" his claims "across the line from conceivable to plausible." *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008).

Plaintiff's detailed allegations supporting his claims of biased decisionmakers are more troubling and in other circumstances might be adequate to state a Fourteenth Amendment due process claim. (Doc. 1 at 29-30); *see Gwinn v. Awmiller*, 354 F.3d 1211, 1219 (10th Cir. 2004) (noting that "an impartial decisionmaker is a fundamental requirement of due process that is fully

---

[28] As discussed in Section I.A., *supra*, Plaintiff alleges that NMCD Defendants wrote or filed disciplinary reports against him on September 2, September 29, September 30, October 7, October 14, November 2, and November 5, 2020. (Doc. 1 at 27-28.) However, he does not allege when Defendants should have held hearings or taken any other action on these reports, nor does he allege when they actually did so. (*See generally id.*)

applicable to [prison] disciplinary proceedings" at which protected liberty or property interest is at stake) (quotation marks omitted). Here, however, they do not, because Plaintiff has not alleged that the challenged misconduct deprived him of a protected liberty or property interest.

To state a due process claim arising out of prison disciplinary proceedings, a plaintiff must allege that he was deprived of a protected liberty or property interest as a result of the challenged proceedings. *Whitmore v. Hill*, 456 F. App'x 726, 728 (10th Cir. 2012) (citing *Moore v. Bd. of Cnty. Comm'rs of Cnty. of Leavenworth*, 507 F.3d 1257, 1259 (10th Cir. 2007)). The Tenth Circuit has assumed without deciding that the imposition of a monetary fine implicates a protected property interest. *Id.* But a protected liberty interest exists only when the penalty imposed inevitably lengthens the prisoner's confinement or subjects him to "atypical and significant hardship … in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484 (1995); *Requena v. Roberts*, 893 F.3d 1195, 1217 (10th Cir. 2018); *Wilson v. Jones,* 430 F.3d 1113, 1117 (10th Cir. 2005); *Meek v. Jordan*, 534 F. App'x 762, 765 (10th Cir. 2013).

In his Complaint, Plaintiff does not plausibly allege that any of the challenged disciplinary proceedings resulted in a monetary fine or a penalty that inevitably lengthened his confinement or subjected him to atypical and significant hardship. (*See generally* Doc. 1.) Indeed, his Complaint does not include any allegations at all about what penalties were imposed. (*Id.*) In these circumstances, he has not plausibly alleged that he was deprived of a protected property or liberty interest and has failed to state a viable due process claim based on Defendants' alleged mishandling of the proceedings. *Requena*, 893 F.3d at 1217; *Meek*, 534 F. App'x at 765. The Court should therefore dismiss Plaintiff's claims challenging Defendants' handling of disciplinary proceedings against him to the extent they allege Fourteenth Amendment due process violations.

Plaintiff's "Retaliatory Due Process" claims challenging Defendants' handling of disciplinary proceedings are also lacking to the extent they allege retaliation in violation of the First Amendment. First, again, in many respects Plaintiff's Complaint does not include sufficient details to nudge these claims across the line from conceivable to plausible and provide Defendants with fair notice of the grounds on which they rest. *Robbins,* 519 F.3d at 1247, 1249-50. Missing details include hearing dates or time frames and at least a general description of the questions Plaintiff was prevented from submitting and the inadequate evidence on which he was convicted at each hearing. (*See* Doc. 1 at 30-31.)

Second, even assuming Plaintiff could satisfy the first prong of the qualified immunity test as to this part of Claim Seven, *e.g.*, by plausibly alleging that NMCD Defendants repeatedly deprived him of fair disciplinary hearings due to his constitutionally protected activities, he has not satisfied the test's second prong as to these claims. Specifically, he has not identified any caselaw clearly establishing that the conduct he describes in this part of his Complaint violated his First Amendment rights.[29] *Leverington*, 643 F.3d at 732. Nevertheless, it is not obvious that it would be futile for Plaintiff to seek leave to amend his Complaint to allege sufficient facts to state plausible First and Fourteenth Amendment "Retaliatory Due Process" claims based on NMCD Defendants' alleged mishandling of disciplinary proceedings against him. Nor is it obvious that Plaintiff could not allege a violation of clearly established law on this basis. As such, these claims should be dismissed without prejudice.[30] *Hall*, 935 F.2d at 1110.

---

[29] In this regard, I note that clearly established law must not be defined "at a high level of generality" and instead "must be particularized to the facts of the case." *Knopf v. Williams*, 884 F.3d 939, 946–47 (10th Cir. 2018).

[30] Of course, "[a] prisoner cannot maintain a [First Amendment] retaliation claim when he is convicted of the actual behavioral violation underlying the alleged retaliatory false disciplinary report and there is evidence to sustain the conviction." *Requena*, 893 F.3d at 1211. And in general, "a prisoner may not bring a § 1983 claim challenging a disciplinary hearing by seeking damages or declaratory relief when [his] claim would necessarily imply the invalidity of the punishment imposed unless [he] first demonstrates that [his] disciplinary conviction or sentence was previously invalidated." *Lucas v. Bd. of Cnty. Commissioners of Cnty. for Larimer Cnty. Colo.*, 2023 WL 8271988, at *4 (10th

3.      *Ban Prohibiting Mail Between Plaintiff and his Fiancée*

Movants next argue that the Court should dismiss Plaintiff's "Retaliatory Due Process" claims challenging the alleged ban prohibiting mail between Plaintiff and his fiancée, because these claims are "duplicative" of claims Plaintiff brought in a prior lawsuit filed in this District. (Doc. 50 at 18.) As explained below, I agree, though by application of the doctrine of claim preclusion rather than the related doctrine raised by Movants, *i.e.*, the doctrine against claim-splitting.

Plaintiff filed *Bastian v. Jaramillo*, Civ. No. 21-350 WJ/JFR (D.N.M.) ("*Bastian I*") in April 2021, well over a year before he filed the present lawsuit. In *Bastian I*, as in this case, Plaintiff asserted claims under 42 U.S.C. § 1983, alleging that in October 2020, NMCD employees including Defendants Jaramillo, Hatch, and Tafoya Lucero violated his First and Fourteenth Amendment rights by banning all mail between him and his fiancée.[31] *Id.* (Doc. 1 at 4, 9-11, 18-19). Plaintiff further alleged that he received "no formal or informal hearing on the matter and was provided no right or ability to appeal" the ban. *Id.* Plaintiff sought declaratory relief, compensatory and punitive damages, and costs as a result of these alleged constitutional violations. *Id.* (Doc. 1 at 9, 20).

On March 8, 2023, the *Bastian I* defendants filed a *Martinez* Report and a motion to dismiss or for summary judgment. *Id.* (Docs. 32, 34-36). Plaintiff filed a response in opposition to the

---

Cir. Nov. 30, 2023) (quotation marks omitted). But Movants have not challenged Plaintiff's "Retaliatory Due Process" claims arising out of the disciplinary proceedings against him on either of these grounds and so I do not address those grounds here. (*See generally* Doc. 50.)

[31] In *Bastian I*, as in this case, Plaintiff alleged that Defendant Tafoya Lucero had a "policy and practice" of permitting her subordinates to engage in the challenged conduct rather than engaging in such conduct herself. *Bastian I*, Civ. No. 21-350 (Doc. 1 at 11-12, 18-19); (*see also* Doc. 1 at 30-31.)

motion on July 31, 2023, and the defendants filed a reply in support of it on October 31, 2023. *Id.* (Docs. 72, 83).

On April 30, 2024, the Court granted the defendants summary judgment on Plaintiff's claims. *Id.* (Docs. 89, 90). Among other things, as relevant here, the Court granted the defendants summary judgment on Plaintiff's constitutional claims challenging the mail ban because Plaintiff failed to demonstrate that the ban was unconstitutional, there was no genuine issue of material fact, and the defendants were entitled to a judgment as a matter of law. *Id.* (Doc. 89 at 25-28).

Because the Court did not issue its order granting summary judgment in *Bastian I* until after Movants filed the present Motion, *id.* (Docs. 89, 90), the Motion raises the judicial doctrine against claim-splitting, which applies to two cases pending at the same time, rather than the "related" doctrine of claim preclusion, which applies when one of the cases has been resolved. (Doc. 50 at 18); *Katz v. Gerardi*, 655 F.3d 1212, 1218 (10th Cir. 2011). However, now that the Court has granted summary judgment in *Bastian I*, claim preclusion is the applicable doctrine.

As an affirmative defense, claim preclusion must generally be pled and proven by the defendant. *Johnson v. Spencer*, 950 F.3d 680, 712 (10th Cir. 2020). However, in "special circumstances," courts may address the doctrine *sua sponte*, because its function is to protect not only "the defendant's interest in avoiding the burdens of twice defending a suit," but also the courts' interest in avoiding "unnecessary judicial waste." *Grays v. Auto Mart USA, LLC*, 2022 WL 2763096, at *6 (10th Cir. July 15, 2022). Here, I consider *sua sponte* whether claim preclusion applies to Plaintiff's "Retaliatory Due Process" claims challenging the ban prohibiting mail between him and his fiancée, because (1) by raising the claim-splitting doctrine, Movants have affirmatively asserted their interest in avoiding the burdens of twice defending against these

claims, and (2) application of the related doctrine of claim preclusion will avoid unnecessary judicial waste.

"Claim preclusion prevents a party from litigating a legal claim that was or could have been the subject of a previously issued final judgment." *Johnson*, 950 F.3d at 693 (brackets and quotation marks omitted). The doctrine bars a claim when there is (1) a final judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits. *Denver Homeless Out Loud v. Denver, Colo.*, 32 F.4th 1259, 1271 (10th Cir. 2022) ("*Denver Homeless*"); *Johnson*, 950 F.3d at 693. Also, "[e]ven if these three elements are satisfied, there is an exception to the application of claim preclusion where the party resisting it did not have a full and fair opportunity to litigate the claim in the prior action."[32] *Denver Homeless*, 32 F.4th at 1271; *Johnson*, 950 F.3d at 693 (quotation marks omitted). "An action barred under the doctrine of claim preclusion fails to state a claim for which relief can be granted." *Anderson v. Pollard*, 2021 WL 3503418, at *2 (10th Cir. Aug. 10, 2021).

Here, the part of Claim Seven challenging the ban prohibiting mail between Plaintiff and his fiancée satisfies each of the three required elements of claim preclusion, and the exception does not apply. First, there has been a final judgment on the merits in the earlier action. "If [a] judgment determines that the plaintiff has no cause of action based on rules of substantive law, then it is on the merits." *Brownback v. King*, 592 U.S. 209, 216 (2021) (quotation marks omitted). A summary judgment ruling hinging on whether the undisputed facts establish all of the elements of a claim is "a quintessential merits decision." *Id.*

---

[32] Although the Tenth Circuit has "at times characterized the 'full and fair opportunity to litigate' as a fourth requirement of res judicata," it has "since clarified that the absence of a full and fair opportunity to litigate is more appropriately treated as an exception to the application of claim preclusion when the three referenced requirements are met." *Johnson*, 950 F.3d at 708 (quotation marks omitted).

In *Bastian I*, this Court granted NMCD employees including Defendants Jaramillo, Hatch, and Tafoya Lucero summary judgment on Plaintiff's claims, including his claims challenging the constitutionality of the ban prohibiting mail between him and his fiancée. *Bastian I*, Civ. No. 21-350 (Docs. 89, 90). The Court determined that Plaintiff had no cause of action based on rules of substantive law, and its decision hinged on whether the undisputed facts established all of the elements of his claims. *Id.* (Doc. 89 at 25-28). As such, the Court's order disposing of *Bastian I* is "a quintessential merits decision," and the first element of claim preclusion is satisfied. *Brownback*, 592 U.S. at 216.

Turning to the second element, *i.e.*, identity of parties or privies in the two suits, the parties at issue here are identical to parties in the prior suit. In *Bastian I*, Plaintiff asserted his claims challenging the mail ban against NMCD employees including Defendants Jaramillo, Hatch, and Tafoya Lucero in their individual and official capacities. *Bastian I*, Civ. No. 21-350 (Doc. 1 at 3-5, 9-12, 18-19). Likewise, in the part of Claim Seven challenging the mail ban, Plaintiff asserts claims against Defendants Jaramillo, Hatch, and Tafoya Lucero in their individual and official capacities.[33] (Doc. 1 at 4-6, 30-31). The second element of claim preclusion is therefore satisfied. *Denver Homeless*, 32 F.4th at 1271.

As noted above, the third element of claim preclusion requires "identity of the cause of action in both suits." *Id.* To satisfy this element, "[t]he causes of action need not be identical in the sense that they raise the same claims based on the same facts." *Hatch v. Boulder Town Council*,

---

[33] To the extent that Plaintiff also asserts this part of Claim Seven against the NMCD, the Court need not decide whether the NMCD is in privity with Defendants Jaramillo, Hatch, and Tafoya Lucero because the claims against the NMCD would fail even if claim preclusion did not bar them, as explained in Section IV.G. and H., *infra*. However, I note that "the real party in interest in an official-capacity suit is the governmental entity," *Hafer*, 502 U.S. at 25, which strongly suggests that the NMCD is in privity with Defendants Jaramillo, Hatch, and Tafoya Lucero in their official capacity for purposes of claim preclusion. *See Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1241 (10th Cir. 2017) ("[P]rivity requires a showing that the parties in the two actions are really and substantially in interest the same.") (quotation marks omitted).

471 F.3d 1142, 1151 (10th Cir. 2006) (quotation marks omitted). Rather, suits involve the same cause of action if they "arise[] from the same transaction or involve[] a common nucleus of operative facts." *Brownback*, 592 U.S. at 215 n.3 (quotation marks and brackets omitted); *see also, e.g.*, *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1240 (10th Cir. 2017) ("[A] cause of action includes all claims or legal theories of recovery that arise from the same transaction, event, or occurrence."); *Nwosun v. Gen. Mills Restaurants, Inc.*, 124 F.3d 1255, 1257 (10th Cir. 1997) (same).

In *Bastian I*, Plaintiff challenged NMCD employees' ban, in October 2020 at the NENMCF, prohibiting mail between him and his fiancée. *Bastian I*, Civ. No. 21-350 (Doc. 1 at 9-12, 18-19). And here, in the at-issue portion of Claim Seven, Plaintiff challenges exactly the same ban. (Doc. 1 at 30-31.) Clearly, then, the two sets of claims arise from the same transaction, event, or occurrence and involve a common nucleus of operative facts. Thus, the third element of claim preclusion is satisfied.

Finally, I consider the exception to claim preclusion that applies when the party opposing it did not have a full and fair opportunity to litigate the claim in the prior action. *Denver Homeless*, 32 F.4th at 1271; *Johnson*, 950 F.3d at 693. But "[t]his narrow exception applies only where the requirements of due process were not afforded—where a party shows a deficiency that would undermine the fundamental fairness of the original proceedings." *Lenox MacLaren Surgical Corp.*, 847 F.3d at 1243 (citations and quotation marks omitted). And the docket in *Bastian I* plainly shows that Plaintiff was afforded due process in those proceedings. For example, not only did he respond in opposition to the defendants' motion to dismiss or for summary judgment, but also he filed objections to the defendants' *Martinez* Report.[34] *See Bastian I*, Civ. No. 21-350 (Docs. 72,

---

[34] In addition, Plaintiff could have objected to the Magistrate Judge's Proposed Findings and Recommended Disposition ("PFRD") recommending that the Court grant the defendants summary judgment, though he failed to do

73). Thus, the full-and-fair-opportunity exception to claim preclusion does not apply, and claim preclusion operates to bar Plaintiff's "Retaliatory Due Process" claims challenging the ban prohibiting mail between him and his fiancée. This part of Claim Seven should be dismissed with prejudice.

### 4.   Ban Prohibiting Visitation Between Plaintiff and his Fiancée

Movants next argue that the Court should dismiss Plaintiff's "Retaliatory Due Process" claims challenging NMCD Defendants' ban prohibiting visitation between Plaintiff and his fiancée for failure to state a claim and on the basis of qualified immunity. (Doc. 50 at 17-18.) In these claims, Plaintiff alleges that Defendants Jaramillo, Hatch, and Tafoya Lucero violated his constitutional rights when they "permanently banned [his] fiancée from ever visiting [him] and provided [him] no Due Process."[35] (Doc. 1 at 30.) As explained below, Movants are correct that Plaintiff has failed to state a Fourteenth Amendment due process claim arising out of the visitation ban. However, Movants' Motion wholly fails to address Plaintiff's First Amendment retaliation claims arising out of the ban, which should therefore survive at this juncture. (*See generally* Doc. 50.)

As explained in Section IV.D.1., *supra*, to establish a due process violation, a plaintiff must first demonstrate that the defendant deprived him of a constitutionally protected liberty or property interest. *Muniz-Savage*, 647 F. App'x at 904. The "denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence, and therefore is not independently protected by the Due Process Clause." *Ky. Dep't of Corr. v. Thompson,* 490

---

so within the time allowed. Plaintiff did move to extend the time to object to the Magistrate Judge's PFRD, but only after the deadline for doing so had expired and the Court had entered its order adopting the PFRD. *Bastian I,* Civ. No. 21-350 (Docs. 89, 90, 92). The Court therefore denied this motion as untimely and moot. *Id.* (Doc. 94 at 1-2). In no way does this ruling undermine the fundamental fairness of the proceedings in *Bastian I.*

[35] Again, Plaintiff alleges that Defendant Tafoya Lucero had a "policy and practice" of permitting her subordinates to engage in the challenged conduct rather than engaging in such conduct herself. (Doc. 1 at 30-31.)

U.S. 454, 461 (1989) (quotation marks omitted); *see also Gray v. Bruce*, 26 F. App'x 819, 824 (10th Cir. 2001) ("[N]either prisoners nor their visitors have a constitutional right to unfettered visitation.").

Further, an inmate's state-created liberty interest in the conditions of his confinement is "generally limited to freedom from restraint which … imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484; *see also Est. of DiMarco v. Wyoming Dep't of Corr., Div. of Prisons*, 473 F.3d 1334, 1339 (10th Cir. 2007) ("State policies or regulations will not create the basis for a liberty interest in the conditions of confinement so long as they do not impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.") (quotation marks and brackets omitted). The "touchstone" of this inquiry "is not the precise language of a state's regulations regarding restrictive conditions of confinement but the nature of those conditions themselves in relation to the ordinary incidents of prison life." *Est. of DiMarco*, 473 F.3d at 1340 (quotation marks omitted). In making this assessment, courts "must be mindful of the primary management role of prison officials[,] who should be free from second-guessing or micro-management" by the federal judiciary. *Id.* at 1342. "Relevant factors might include" whether the challenged restriction "relates to and furthers a legitimate penological interest," is "extreme," "increases the duration of confinement," and is "indeterminate." *Id.* However, none of these factors are dispositive. *Id.*

Here, Plaintiff has failed to allege any specific facts to support the inference that the challenged ban on visitation with his fiancée imposed atypical and significant hardship on him in relation to the ordinary incidents of prison life. (*See generally* Doc. 1.) In particular, he has made no factual allegations that would allow a rational factfinder to infer that the ban was "a dramatic departure from the basic conditions of [his] sentence." *Sandin*, 515 U.S. at 485. As such, he has

failed to plausibly allege that the visitation ban implicated a protected liberty interest and has failed to state a due process claim based on its imposition.[36] *Est. of DiMarco*, 473 F.3d at 1339, 1344. Nevertheless, it is not patently obvious that it would be futile for Plaintiff to seek leave to amend his Complaint to allege specific facts showing that he had a state-created liberty interest in freedom from a permanent ban on visitation with his fiancée. As such, this part of Claim Seven should be dismissed without prejudice. *Hall*, 935 F.2d at 1110.

As noted above, Movants' Motion is devoid of any arguments directly addressing Plaintiff's First Amendment retaliation claims challenging the alleged ban on visits with his fiancée. (Doc. 50 at 17-18.) Also, Movants' arguments in opposition to Plaintiff's Fourteenth Amendment due process claims neither pertain to nor undermine his First Amendment retaliation claims challenging the ban.[37] "A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. [The Court] will not do his research for him." *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001). Movants having made no effort to explain why they are entitled to dismissal of or qualified immunity from these First Amendment claims, the Court should decline to dismiss them at this juncture.

### E.  Claim Eight ("Denial of Due Process in Violation of the Fourteenth Amendment")

Movants next argue that the Court should dismiss Claim Eight because it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and Movants

---

[36] By failing to state a due process claim based on the alleged visitation ban, Plaintiff has failed to satisfy the first prong of the qualified immunity analysis. *Leverington*, 643 F.3d at 732. As such, I "need not address the second prong" with respect to these claims. *Moya v. Schollenbarger*, 465 F.3d 444, 458 (10th Cir. 2006).

[37] "[P]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights," and "[t]his principle applies *even where the action taken in retaliation would be otherwise permissible*." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (emphasis added) (quotation marks omitted). Thus, the fact that NMCD employees may have been permitted to ban visitation between Plaintiff and his fiancée for non-retaliatory reasons does not defeat Plaintiff's First Amendment retaliation claims challenging the ban.

"should not have to guess whether Plaintiff is attempting to bring a due process claim against them, and for which conduct." (Doc. 50 at 19-20.) Movants also argue that the individual NMCD Defendants in their individual capacities are entitled to qualified immunity from Claim Eight because Plaintiff has "failed to identify a violation of a clearly established constitutional right." (*Id.* at 20.) As explained below, though Movants overstate the opacity of this portion of Plaintiff's Complaint, I agree that Claim Eight should be dismissed.

Claim Eight is called "Denial of Due Process in Violation of the Fourteenth Amendment." (Doc. 1 at 31.) In the body of this Claim, Plaintiff affirmatively states that his "Fourteenth Amendment right to Due Process was violated." (*Id.*) Thus, notwithstanding Movants' suggestion to the contrary, there is no doubt that Plaintiff is attempting to bring due process claims in Claim Eight.

Further, to support Claim Eight, Plaintiff incorporates "all facts and allegations set forth in paragraphs 57 through 95" of his Complaint. (*Id.* at 31.) And Paragraph 57 incorporates "all facts and allegations set forth in paragraph[s] 1 through 54" of the Complaint. (*Id.* at 24.) In other words, Plaintiff incorporates all of his factual allegations to support the due process claims he asserts in Claim Eight. Thus, and again notwithstanding Movants' suggestion to the contrary, it is plain that Plaintiff wishes to rely on all of the conduct alleged in the Complaint to support these claims.

Nevertheless, Claim Eight fails to state any viable due process claims. I have already explained in Section IV.D., *supra*, why Plaintiff has failed to state a due process claim based on the facts alleged in Claim Five and the "Retaliatory Due Process" section of Claim Seven. The parts of Claim Eight reasserting such claims should be dismissed for the reasons previously stated. Moreover, as explained below, Plaintiff has likewise failed to state a due process claim based on

the facts alleged in Claims One through Four, Six, and the remaining parts of Claim Seven; and,

the parts of Claim Eight asserting due process claims based on these facts should also be dismissed.

In Claim One, Plaintiff alleges that NMCD Defendants violated his Eighth Amendment

right to be free from cruel and unusual punishment by failing or refusing to provide him with

adequate medical care and water. (Doc. 1 at 17-24.) But this alleged conduct cannot be the basis

of both Eighth Amendment and substantive due process claims.

> [W]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing [a plaintiff's] claims.

*Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) ("*Lewis*"); *Springer v. Seventh Jud. Dist.*

*Ct.*, — F. Supp. 3d —, 2024 WL 531271, at *13 (D.N.M. Feb. 9, 2024) (quotation marks omitted).

The Eighth Amendment provides an explicit textual source of constitutional protection

from the conditions of confinement Plaintiff challenges in Claim One. *Wishneski v. Andrade*, 572

F. App'x 563, 566 (10th Cir. 2014). Thus, he cannot also challenge these conditions under "the

more generalized notion of substantive due process." *Lewis*, 523 U.S. at 842. Further, none of the

allegations in Claim One appear to implicate Plaintiff's procedural due process rights in any way,

and by failing to respond to Movants' Motion, Plaintiff has chosen not to point out how they might

do so. In these circumstances, Movants are correct that Claim Eight's due process claims

incorporating Claim One's allegations should be dismissed with prejudice for failure to state a

claim and, as to the individual NMCD Defendants in their individual capacities, on the basis of

qualified immunity. *Leverington*, 643 F.3d at 732.

Claims Two through Four, in turn, merely incorporate the facts alleged in Claim One. (Doc.

1 at 24.) Thus, no more than Claim One can they state a due process claim, and the parts of Claim

Eight incorporating the allegations in Claims Two through Four should also be dismissed with

prejudice for failure to state a claim and, as to the individual NMCD Defendants in their individual capacities, on the basis of qualified immunity.

The part of Claim Eight incorporating the facts alleged in Claim Six are likewise inadequate to state a Fourteenth Amendment due process claim. As discussed in Section IV.C., *supra*, in Claim Six, Plaintiff alleges that NMCD Defendants intentionally destroyed his personal property. (Doc. 1 at 26.) But as explained below, Plaintiff has failed to allege sufficient facts to state a due process claim on this basis.

"[W]here a loss of property is occasioned by a random, unauthorized act by a state employee," pre-deprivation procedures are "not only impracticable, but impossible." *Hudson v. Palmer*, 468 U.S. 517, 532 (1984); *Requena*, 893 F.3d at 1212. Thus, in such cases, "Fourteenth Amendment due process guarantees pertaining to property are satisfied when an adequate[] state post[-]deprivation remedy exists[.]" *Smith v. Colorado Dep't of Corr.*, 23 F.3d 339, 340 (10th Cir. 1994). Both administrative remedies and state law claims may constitute adequate post-deprivation remedies. *Hudson* 468 U.S. at 536 n.15; *Requena*, 893 F.3d at 1212; *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989).

Here, Plaintiff does not allege that NMCD Defendants destroyed his property pursuant to an "established state procedure" such that pre-deprivation process could have been provided. *Hudson*, 468 U.S. at 532. Rather, he alleges that Defendants engaged in random, unauthorized acts of destruction. (Doc. 1 at 26.) Thus, to state a due process claim, Plaintiff would have to allege not only that Defendants intentionally destroyed his belongings, but also that he had no adequate post-deprivation remedy. *Gee v. Pacheco*, 627 F.3d 1178, 1194 (10th Cir. 2010). This Plaintiff has failed to do.

While Plaintiff has certainly alleged that the NENMCF's grievance procedures were inadequate, nowhere does he allege that state tort law also provided an inadequate post-deprivation remedy for the destruction of his property. *See Stengel v. N.M. Corr. Dep't*, 640 F. App'x 701, 704 (10th Cir. 2016) (affirming district court's determination that "New Mexico's state tort remedies provide a post[-]deprivation remedy sufficient … to foreclose [the plaintiff's] due process claim" based on confiscation of his property). Nor is any such inadequacy apparent. First, though the NMTCA does not waive the NMCD's and its employees' sovereign immunity from state tort claims in federal court, it does so in state court, as discussed in Section IV.B., *supra*. And second, Section 41-4-12 of the NMTCA waives corrections officers' immunity from liability for the alleged property destruction at issue, as discussed in Section IV.C., *supra*.

In light of the foregoing, Claim Eight's due process claims incorporating Claim Six's factual allegations should be dismissed for failure to state a claim.[38] *Stengel*, 640 F. App'x at 704. However, it is not patently obvious, on the facts alleged, that it would be futile for Plaintiff to seek leave to amend this part of Claim Eight, *e.g.*, to allege that his particular circumstances rendered state tort remedies unavailable to him. As such, this part of Claim Eight should be dismissed without prejudice. *Hall*, 935 F.2d at 1110.

Finally, I consider the parts of Claim Eight incorporating the facts alleged in the sections of Claim Seven I have not yet addressed, *i.e.*, the sections entitled "Retaliatory False Disciplinary" and "Retaliatory Threats to Personal Safety."[39] (Doc. 1 at 26-29.) In these sections, Plaintiff alleges

---

[38] By failing to state a due process claim based on the alleged destruction of his personal property, Plaintiff has failed to satisfy the first prong of the qualified immunity analysis. *Leverington*, 643 F.3d at 732. As such, I "need not address the second prong" with respect to these claims. *Moya*, 465 F.3d at 458.

[39] As noted above, in addition to its three titled sections, Claim Seven incorporates the facts alleged in Claims One through Six to assert First Amendment retaliation claims. (Doc. 1 at 26-27.) But I have already explained in this Section and Section IV.A., *supra*, why the factual allegations in Claims One through Six do not state a Fourteenth Amendment due process claim.

that NMCD Defendants filed or supported retaliatory false disciplinary reports against him and told other inmates he was a "rat" and a "snitch." (*Id.*)

However, Plaintiff cannot assert substantive due process claims based on this alleged misconduct because other constitutional amendments provide explicit textual sources of protection from it. *See Lewis*, 523 U.S. at 842. Specifically, the First Amendment provides an explicit textual source of protection from retaliatory false disciplinary reports, and both the First and Eighth Amendments provide explicit textual sources of protection from retaliatory threats to a prisoner's personal safety. *See, e.g., Zarska v. Higgins*, 171 F. App'x 255, 259-60 (10th Cir. 2006) (holding that First Amendment protects against retaliatory false disciplinary reports), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007); *Irizarry*, 38 F.4th at 1292 (holding that First Amendment protects against retaliatory "physical and verbal intimidation"); *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001) (holding that Eighth Amendment protects against threats to prisoners' personal safety). Thus, Plaintiff must rely on these amendments, and "not the more generalized notion of substantive due process," to challenge the constitutionality of the conduct alleged in the "Retaliatory False Disciplinary" and "Retaliatory Threats to Personal Safety" sections of Claim Seven. *Lewis*, 523 U.S. at 842.

Further, none of the allegations in these two sections appear to implicate Plaintiff's procedural due process rights; and, by failing to respond to Movants' Motion, Plaintiff has chosen not to dispute the point. In these circumstances, Movants are correct that Claim Eight does not, by incorporating the allegations in these two sections, state a due process claim. These parts of Claim Eight should be dismissed with prejudice for failure to state a claim and, as to the individual Defendants in their individual capacities, on the basis of qualified immunity. *Knight*, 749 F.3d at 1190; *Leverington*, 643 F.3d at 732.

**F. Section 1983 Claims against Defendants Tafoya Lucero, Madrid, Hatch, Bean, Frazier, and Baker in their Individual Capacities**[40]

In the next section of their Motion, Movants argue that Plaintiff has failed to state a constitutional claim under 42 U.S.C. § 1983 against Defendants Tafoya Lucero, Madrid, Bean, Frazier, and Baker in whole, and Defendant Hatch in part, and that these Defendants are entitled to qualified immunity. (Doc. 50 at 20-23.) Specifically, Movants argue that Plaintiff has not alleged "the requisite personal involvement" of Defendants Tafoya Lucero and Madrid in full and Defendant Hatch in part, and that Plaintiff's allegations are too "conclusory, non-specific and implausible" to "pass muster under *Iqbal*" as to all of the listed Defendants. (*Id.* at 20-21.) As explained below, I agree in part.

Section 1983 "is a remedial vehicle for raising claims based on the violation of [federal] constitutional rights." *Brown v. Buhman*, 822 F.3d 1151, 1161 n.9 (10th Cir. 2016). To state a claim against a governmental official under 42 U.S.C. § 1983, a plaintiff must allege that the official, through her or his own individual actions, personally violated the Constitution. *Iqbal*, 556 U.S. at 676. Further, the plaintiff's complaint must "make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claim against him or her." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008). General and conclusory statements that a defendant violated a plaintiff's constitutional right are insufficient to state a claim. *See id.*

Because Section 1983 claims must be based on personal conduct, "[g]overnment officials may not be held liable [under § 1983] for the unconstitutional conduct of their subordinates under

---

[40] As discussed in Section IV.B. and Section IV.C., *supra*, Plaintiff's state tort claims against all of the NMCD Defendants should be dismissed for lack of jurisdiction. Moreover, as discussed in Section IV.G. and Section IV.H., *infra*, all of Plaintiff's claims against the official capacity NMCD Defendants and for declaratory and injunctive relief should also be dismissed. I therefore limit my discussion of Plaintiff's claims against Defendants Tafoya Lucero, Madrid, Hatch, Bean, Frazier, and Baker to his federal constitutional claims under 42 U.S.C. § 1983 for money damages against these Defendants in their individual capacities.

a theory of *respondeat superior.*" *Iqbal*, 556 U.S. at 676; *Dodds v. Richardson*, 614 F.3d 1185, 1197 (10th Cir. 2010). However, a

> plaintiff may … succeed in a § 1983 suit against a defendant-supervisor by demonstrating: (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation.

*Dodds*, 614 F.3d at 1199.

In addition, a plaintiff can state a Section 1983 claim against a government official based on his or her participation in "a conspiracy to deprive a plaintiff of a constitutional or federally protected right under color of state law." *Dixon v. City of Lawton*, 898 F.2d 1443, 1449 n.6 (10th Cir. 1990). "[T]he conspiracy claim allows for imputed liability; a plaintiff may be able to impose liability on one defendant for the actions of another performed in the course of the conspiracy." *Id*. To state a conspiracy claim under Section 1983, a plaintiff must allege "specific facts" showing an "agreement upon a common, unconstitutional goal," and "concerted action amongst the defendants" to advance that goal. *Bledsoe v. Carreno*, 53 F.4th 589, 609 (10th Cir. 2022); *Frasier v. Evans*, 992 F.3d 1003, 1024 (10th Cir. 2021).

Conclusory allegations of supervisory liability or a conspiracy are not enough to survive a motion to dismiss. *Frasier*, 992 F.3d at 1024; *Smith v. Allbaugh*, 987 F.3d 905, 911–12 (10th Cir. 2021). Moreover, to state a supervisory liability or a conspiracy claim under Section 1983, a plaintiff must plausibly allege an underlying deprivation of a constitutional right. *Dodds*, 614 F.3d at 1199; *Dixon*, 898 F.2d at 1449. "This is because the essence of a § 1983 claim is the deprivation of the right rather than the conspiracy," *Dixon*, 898 F.2d at 1449, or the supervisory policy. I will address Plaintiff's claims against Defendants Tafoya Lucero, Madrid, Bean, Frazier, Baker, and Hatch in accordance with these standards.

1.      *Defendant Tafoya Lucero*

Plaintiff alleges the following about Defendant Tafoya Lucero specifically. Defendant Tafoya Lucero is the "NMCD Cabinet Secretary." (Doc. 1 at 4.) She "failed to supervise and train" other Defendants who failed or refused to provide Plaintiff with adequate medical care and water. (*Id.* at 23-24.) Plaintiff sent her written notice of these Defendants' misconduct via certified mail but she failed to take any corrective action. (*Id.* at 24.)

Defendant Tafoya Lucero and others created and conspired to implement a policy and practice of intentionally denying Plaintiff the right to file grievances by denying having received his grievances and delaying responses to them. (*Id.* at 25, 30-31.) On October 13, 2020, Plaintiff sent Defendant Tafoya Lucero written notice via certified mail of other Defendants' denial of his right to file grievances. (*Id.* at 25.)

Finally, Defendant Tafoya Lucero "allowed a policy and practice of [D]efendants retaliating against [P]laintiff by not supervising and training the involved officers," and took no corrective action even though Plaintiff sent her written notice, requests for investigation, and requests for the preservation of evidence. (*Id.* at 30.)

Movants are correct that none of these allegations "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. First, Plaintiff does not allege that Defendant Tafoya Lucero was directly involved in any of the misconduct he challenges in his Complaint. (*See generally* Doc. 1.)

Second, Plaintiff's supervisory liability claims against this Defendant are implausible because his allegations against her "encompass a wide swath of conduct, much of it innocent." *Robbins*, 519 F.3d at 1247. Among other things, to state a supervisory liability claim against Defendant Tafoya Lucero, Plaintiff would have to allege that her acts and omissions caused the

complained-of constitutional harm. *Dodds*, 614 F.3d at 1199. Yet his factual allegations amply encompass the absence of a causal connection by suggesting that she failed to take "corrective action" only *after* the harm occurred. (*See, e.g.,* Doc. 1 at 24.) In short, Plaintiff's vague and conclusory allegations do not "nudge[]" his Section 1983 supervisory liability claims against this Defendant "across the line from conceivable to plausible." *Robbins,* 519 F.3d at 1247.

Third, Plaintiff's allegations that Defendant Tafoya Lucero conspired with other Defendants to violate his constitutional rights are also inadequate because they are conclusory. Indeed, Plaintiff's Complaint lacks any non-conclusory factual allegations at all regarding how Defendant Tafoya Lucero personally participated in a conspiracy to violate his constitutional rights. (*See generally* Doc. 1.) He has therefore failed to satisfy federal pleading standards with respect to his conspiracy claims against her. *Iqbal*, 556 U.S. at 678; *Khalik*, 671 F.3d at 1191.

In sum, Plaintiff has failed to state a plausible claim against Defendant Tafoya Lucero for direct, supervisory, or conspiracy liability under Section 1983.[41] Nevertheless, to the extent his claims for underlying constitutional violations survive, it is not patently obvious that it would be futile for Plaintiff to seek leave to amend his Complaint to assert plausible, nonconclusory facts supporting supervisory liability or conspiracy claims against her. As such, these claims should be dismissed without prejudice. *Hall*, 935 F.2d at 1110.

### 2.   *Defendant Madrid*

Plaintiff alleges the following about Defendant Madrid specifically. At the relevant times, Defendant Madrid was the "Statewide Grievance Appeal Officer." (Doc. 1 at 5.) Defendant Madrid and others created and conspired to implement a policy and practice of intentionally depriving

---

[41] By failing to state a Section 1983 claim against Defendant Tafoya Lucero, Plaintiff has failed to satisfy the first prong of the qualified immunity analysis. *Leverington*, 643 F.3d at 732. As such, I "need not address the second prong" with respect to his Section 1983 claims against this Defendant. *Moya*, 465 F.3d at 458.

Plaintiff of the right to file grievances by denying having received his grievances and delaying responses to them. (*Id.* at 25.) On October 13, 2020, Plaintiff sent Defendant Madrid written notice of other Defendants' denial of his right to file grievances via certified mail. (*Id.*)

These threadbare, conclusory allegations are wholly insufficient to state a plausible Section 1983 claim against Defendant Madrid. *Iqbal*, 556 U.S. at 678; *Khalik*, 671 F.3d at 1191. Further, Plaintiff's claims against this Defendant are limited to those arising out of the alleged mishandling of his grievances, and he has failed to allege a viable underlying constitutional violation with respect to this conduct as discussed in Sections IV.A., IV.D.1., and IV.E., *supra*. Without an underlying constitutional violation, Plaintiff cannot establish a supervisory liability or conspiracy claim against this Defendant under Section 1983. *Dodds*, 614 F.3d at 1199; *Dixon*, 898 F.2d at 1449. Thus, and because it is obvious that it would be futile to grant him leave to amend, Plaintiff's Section 1983 claims against Defendant Madrid should be dismissed with prejudice for failure to state a claim and on the basis of qualified immunity. *Knight*, 749 F.3d at 1190; *Leverington*, 643 F.3d at 732.

### 3.   *Defendant Hatch*

Plaintiff alleges the following about Defendant Hatch specifically. Defendant Hatch was the NENMCF's warden. (Doc. 1 at 5.) On September 25, 2020, he and others placed Plaintiff in restrictive housing unit cell 3-A-104 "knowing that the cell was without water." (*Id.* at 20, 27-28.) On September 27, 2020, Defendant Martinez told a nurse that Defendant Hatch and others did not want Plaintiff moved from that cell. (*Id.* at 22.) In an ensuing disciplinary investigation, Defendant Hatch and others filed false statements to cover up Plaintiff having been deprived of adequate water for days. (*Id.* at 28.) Defendant Boyd told Plaintiff that Defendant Hatch and others "directed everyone to make it look like it was [P]laintiff['s] fault he had no water." (*Id.*)

Defendant Hatch and others created and conspired to implement a policy and practice of intentionally denying Plaintiff the right to file grievances by denying having received his grievances and grievance appeals and delaying responses to them. (*Id.* at 25, 30.) On October 13, 2020, Plaintiff sent Defendant Hatch written notice of other Defendants' denial of his right to file grievances via certified mail. (*Id.* at 25.) Defendants Martin and Rivera told Plaintiff on multiple occasions that Defendant Hatch and others had "agreed to do all they can to stop [P]laintiff from filing complaints against them." (*Id.*)

Defendant Hatch and others created and conspired to implement a policy and practice of violating due process and NMCD policies and procedures in disciplinary proceedings against Plaintiff. (*Id.* at 30.) He and others violated "due process time frames," found Plaintiff guilty without supportive evidence, refused to allow Plaintiff to submit questions to witnesses, and failed to provide Plaintiff with a fair hearing before an impartial fact finder. (*Id.*)

In September 2020, Defendants Hatch and Jaramillo banned all visits between Plaintiff and his fiancée without due process, and in October 2020, they banned all mail between Plaintiff and his fiancée without due process. (*Id.*)

In their Motion, Movants limit their arguments regarding Defendant Hatch to Plaintiff's claims against him arising out of the alleged mishandling of Plaintiff's grievances. (*See* Doc. 50 at 20-23.) Having made no arguments regarding Plaintiff's other Section 1983 claims against this Defendant, they have forfeited their attack on these other claims for purposes of the present Motion. *Phillips*, 244 F.3d at 800 n.10. Thus, I consider only whether Plaintiff's grievance-based claims against Defendant Hatch are viable.

The conclusory allegations supporting Plaintiff's Section 1983 claims against Defendant Hatch arising out of the alleged mishandling of his grievances are insufficient to state a plausible

claim. *Iqbal*, 556 U.S. at 678; *Khalik*, 671 F.3d at 1191. Further, Plaintiff has failed to allege a viable underlying constitutional violation with respect to this conduct, as discussed in Sections IV.A., IV.D.1., and IV.E., *supra*, and without an underlying constitutional violation, Plaintiff cannot establish a supervisory liability or conspiracy claim under Section 1983. *Dodds*, 614 F.3d at 1199; *Dixon*, 898 F.2d at 1449. Because Plaintiff has failed to state a claim against Defendant Hatch based on this conduct and it is obvious that he cannot do so, Defendant Hatch is entitled to dismissal of these claims with prejudice and to qualified immunity from them. *Knight*, 749 F.3d at 1190; *Leverington*, 643 F.3d at 732.

4.     *Defendant Bean*

Plaintiff alleges the following regarding Defendant Bean specifically. Defendant Bean was a disciplinary hearing officer and disciplinary coordinator at the NENMCF. (Doc. 1 at 9, 29.) She and others were also "responsible for answering grievances." (*Id.* at 25.)

Defendant Bean and others created and conspired to implement a policy and practice of depriving Plaintiff of the right to file grievances by denying having received his grievances and delaying responses to them.  (*Id.* at 25, 30.) On October 13, 2020, Plaintiff sent Defendant Bean written notice of other Defendants' denial of his right to file grievances via certified mail. (*Id.* at 25.)

Defendant Bean and others created and conspired to implement a policy and practice of violating due process and NMCD policies and procedures when conducting disciplinary proceedings against Plaintiff. (*Id.* at 30.) She and others violated "due process time frames," found Plaintiff guilty without supportive evidence, refused to allow Plaintiff to submit questions to witnesses, and failed to provide Plaintiff with a fair hearing before an impartial fact finder. (*Id.*) Plaintiff had a pending request for outside investigation of Defendant Bean while she was acting

as a hearing officer "in [P]laintiff's false disciplinary reports." (*Id.* at 29.) She told Plaintiff that she was "rubber stamping guilty on any reports that cross her desk because [P]laintiff grieves and appeals everything and she was tired of having to answer it." (*Id.*)

Plaintiff's allegations supporting his Section 1983 claims against Defendant Bean arising out of the alleged mishandling of his grievances are insufficient to state a plausible claim because they are conclusory. *Iqbal*, 556 U.S. at 678; *Khalik*, 671 F.3d at 1191. Further, Plaintiff has failed to allege a viable underlying constitutional violation with respect to this conduct, as discussed in Sections IV.A., IV.D.1., and IV.E., *supra*, and without an underlying constitutional violation, Plaintiff cannot establish a supervisory liability or conspiracy claim under Section 1983. *Dodds*, 614 F.3d at 1199; *Dixon*, 898 F.2d at 1449. Because Plaintiff has failed to state a Section 1983 claim against Defendant Bean based on the alleged mishandling of his grievances and it is obvious that he cannot do so, these claims should be dismissed with prejudice for failure to state a claim and on the basis of qualified immunity. *Knight*, 749 F.3d at 1190; *Leverington*, 643 F.3d at 732.

Plaintiff's factual allegations supporting his Section 1983 claims against Defendant Bean based on the alleged mishandling of disciplinary proceedings against him are more detailed than the allegations concerning his grievances. Nevertheless, in many respects, they are still too broad and general to state a plausible claim, as explained in Section IV.D.2., *supra*. Moreover, as also explained in that section, Plaintiff has not alleged the deprivation of a protected liberty or property interest as a result of the challenged proceedings, as would be required to state a viable due process claim; and, he has failed to identify any caselaw clearly establishing that Defendant Bean's alleged mishandling of disciplinary proceedings against him violated his First Amendment rights. However, because it is not obvious that it would be futile for Plaintiff to seek leave to amend these

claims against Defendant Bean, they should be dismissed without prejudice. *Hall*, 935 F.2d at 1110.

        5.    *Defendant Frazier*

Plaintiff alleges the following about Defendant Frazier specifically. Defendant Frazier was an "Admin" at the NENMCF. (Doc. 1 at 10.) She and others "denied, and conspired to deny, [P]laintiff the ability to file grievances ... more than [17] different times, without valid justification." (*Id.* at 25.) She and others created and conspired to implement a policy and practice of intentionally denying Plaintiff the right to file grievances by denying having received his grievances and delaying responses to them. (*Id.* at 25, 30.)

These threadbare, conclusory allegations are wholly insufficient to state a plausible Section 1983 claim against Defendant Frazier or to support the inference that she violated a clearly established constitutional right. *Iqbal*, 556 U.S. at 678; *Khalik*, 671 F.3d at 1191. Indeed, they do not provide any particulars at all regarding how Defendant Frazier personally violated Plaintiff's constitutional rights, participated in a conspiracy to do so, or created or implemented a policy or practice that caused a constitutional violation.

Further, Plaintiff's allegations against Defendant Frazier are limited to those concerning the handling of his grievances, and he has failed to allege a viable underlying constitutional violation with respect to this conduct as discussed in Sections IV.A., IV.D.1., and IV.E., *supra*. Without an underlying constitutional violation, Plaintiff cannot establish a supervisory liability or conspiracy claim under Section 1983. *Dodds*, 614 F.3d at 1199; *Dixon*, 898 F.2d at 1449. For these reasons, Plaintiff has failed to state a claim against Defendant Frazier under 42 U.S.C. § 1983; she is entitled to qualified immunity from such claims, *Leverington*, 643 F.3d at 732; and, it is obvious

that it would be futile to grant Plaintiff leave to amend. Plaintiff's Section 1983 claims against Defendant Frazier should be dismissed with prejudice. *Knight*, 749 F.3d at 1190.

      6.    *Defendant Baker*

Plaintiff alleges the following about Defendant Baker specifically. Defendant Baker was a unit manager at the NENMCF. (Doc. 1 at 9.) She and others were "responsible for responding to Informal Grievance Complaints." (*Id.* at 25.) She and others created and conspired to implement a policy and practice of intentionally denying Plaintiff the right to file grievances by denying having received his grievances and delaying responses to them. (*Id.* at 25, 30.) Also, in a disciplinary investigation, Defendant Baker filed a false statement to cover up Plaintiff's having been deprived of adequate water. (*Id.* at 28.)

Plaintiff's allegations in support of his Section 1983 claims against Defendant Baker based on the alleged mishandling of his grievances are insufficient to state a plausible claim because they are conclusory. *Iqbal*, 556 U.S. at 678; *Khalik*, 671 F.3d at 1191. Further, Plaintiff has failed to allege a viable underlying constitutional violation with respect to this conduct, as discussed in Sections IV.A., IV.D.1., and IV.E., *supra*, and without an underlying constitutional violation, Plaintiff cannot establish a supervisory liability or conspiracy claim under Section 1983. *Dodds*, 614 F.3d at 1199; *Dixon*, 898 F.2d at 1449. Because Plaintiff has failed to state a claim against Defendant Baker based on the alleged mishandling of his grievances and he obviously cannot do so, these claims should be dismissed with prejudice for failure to state a claim and on the basis of qualified immunity. *Knight*, 749 F.3d at 1190; *Leverington*, 643 F.3d at 732.

Further, assuming Plaintiff has sufficiently alleged that Defendant Baker was personally involved in filing or supporting a false disciplinary charge against him, he has alleged no plausible, nonconclusory facts to support the inference that she was motivated by his constitutionally

protected activity, as would be required to state a First Amendment retaliation claim on this basis. *Shero,* 510 F.3d at 1203; *Rhodes,* 2024 WL 79964, at *3. Nor has he sufficiently alleged that he was deprived of a protected liberty or property interest as a result of the false charge, as would be required to state a Fourteenth Amendment claim on this basis, as discussed in Section IV.D.2., *supra.*[42] Thus, his First and Fourteenth Amendment claims against Defendant Baker based on her alleged support of a false disciplinary charge should be dismissed for failure to state a claim,[43] but without prejudice, because it is not obvious that it would be futile for him to seek leave to amend. *Hall*, 935 F.2d at 1110.

### G. Section 1983 Claims for Money Damages against the NMCD and the Individual NMCD Defendants in their Official Capacity

Movants next argue that the Court should dismiss Plaintiff's claims for money damages under 42 U.S.C. § 1983 against the NMCD and the individual NMCD Defendants in their official capacity. (Doc. 50 at 4, 223-4.) As explained below, I agree. As discussed in Section IV.B., *supra*, the Eleventh Amendment "generally bars lawsuits in federal court seeking damages against states as well as against state agencies, departments, and employees acting in their official capacity." *Bishop*, 902 F.2d at 810. Accordingly, the NMCD and the NMCD Defendants in their official capacity are entitled to Eleventh Amendment immunity. *Id.*; *Blackburn*, 172 F.3d 62, at *1.

---

[42] Section IV.D.2. addresses Plaintiff's claims arising out of the *mishandling* of disciplinary proceedings against him as alleged in the "Retaliatory Due Process" section of Claim Seven, while Defendant Baker's alleged support of a *false* disciplinary charge is raised in the "Retaliatory False Disciplinary" section of Claim Seven. (Doc. 1 at 28, 30-31.) But regardless of whether he challenges the validity of the charges or the way in which they were handled, Plaintiff must allege that he was deprived of a constitutionally protected liberty or property interest to state a due process claim. *See, e.g., Crider v. Bd. of Cnty. Comm'rs of Cnty. of Boulder*, 246 F.3d 1285, 1289 (10th Cir. 2001); *Whitmore*, 456 F. App'x at 728. And as discussed in Section IV.D.2., Plaintiff has not alleged that he was deprived of a protected liberty or property interest as a result of any of the disciplinary charges or proceedings he challenges.

[43] By failing to state a claim against Defendant Baker based on her alleged support of a false disciplinary charge, Plaintiff has failed to satisfy the first prong of the qualified immunity analysis. *Leverington*, 643 F.3d at 732. As such, I "need not address the second prong" with respect to these claims. *Moya*, 465 F.3d at 458.

"Congress did not abrogate states' Eleventh Amendment immunity when it enacted 42 U.S.C. § 1983." *Ruiz*, 299 F.3d at 1181. Nor is there any indication in the record that any of the NMCD Defendants have waived their Eleventh Amendment immunity from Plaintiff's claims. Thus, the Eleventh Amendment bars Plaintiff's Section 1983 claims for money damages against the NMCD and the individual NMCD Defendants in their official capacity and these claims should be dismissed without prejudice for lack of jurisdiction. *Brereton*, 434 F.3d at 1218; *Ruiz*, 299 F.3d at 1180; *Wyoming*, 279 F.3d at 1225.

Alternatively, these claims should be dismissed because Section 1983 does not authorize them. Section 1983 permits suits against a "person" who, acting under color of state law, deprives the plaintiff of "any rights, privileges, or immunities secured by the Constitution and laws[.]" 42 U.S.C. § 1983. But states and arms of the state are not subject to suit for money damages under Section 1983 in either federal or state court because they are not "persons" under the statute. *Howlett By & Through Howlett v. Rose*, 496 U.S. 356, 365 (1990); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64-71 (1989). Moreover, because "a suit against a state official in his or her official capacity is … no different from a suit against the State itself," an official-capacity defendant cannot be sued for money damages under Section 1983, either. *Will*, 491 U.S. at 71.

Because it is an arm of the state, the NMCD is not a "person" subject to suit under Section 1983. *Blackburn*, 172 F.3d 62, at *1; *Gutierrez v. New Mexico Corr.*, 403 F. Supp. 3d 1090, 1097 (D.N.M. 2019); *Klumb v. New Mexico Corr. Dep't*, 2024 WL 2880530, at *2 (D.N.M. June 7, 2024). Further, Plaintiff's Section 1983 claims against the individual NMCD Defendants in their official capacity are no different from his claims against the state and are also invalid. *Will*, 491 U.S. at 71. Thus, even if Plaintiff's Section 1983 claims against the NMCD and the individual NMCD Defendants in their official capacity were not barred by the Eleventh Amendment, the

claims should still be dismissed because Section 1983 does not authorize suits for money damages against these Defendants.

### H.  Requests for Declaratory and Injunctive Relief

Finally, Movants ask the Court to dismiss Plaintiff's requests for declaratory and injunctive relief against them as moot. (Doc. 50 at 24-25.) In his Complaint, Plaintiff requests an order declaring that Defendants' acts and omissions violated his rights and stating Defendants' duties with respect to those rights. (Doc. 1 at 12.) He also requests injunctive relief in the form of an order "commanding the invalidation of NMCD Policies CD-150500 'Inmate Grievances' and CD-090100 'Inmate Disciplinary.'" (*Id.* at 12, 32.) As explained below, I agree with Movants that these claims against the NMCD Defendants are moot.

Plaintiff is currently incarcerated in Arizona by the ADCRR. (Doc. 1 at 3; Doc. 88 at 1.) In other words, "he is no longer a prisoner within the control of the [NMCD]." *Green v. Branson*, 108 F.3d 1296, 1300 (10th Cir. 1997). As such, "the entry of a declaratory judgment in [his] favor would amount to nothing more than a declaration that he was wronged, and would have no effect on the [NMCD Defendants'] behavior towards him." *Id.* Likewise, an injunction invalidating NMCD policies would have no effect on these Defendants' behavior toward him. *Id.* In these circumstances, his requests for a declaration of his rights vis-à-vis the NMCD Defendants, and for injunctive relief against them, are moot. *Id.*

Relatedly, I note that Plaintiff's single-sentence request for an order invalidating two NMCD policies fails to state a claim for injunctive relief because he does not plausibly allege that he will suffer irreparable harm without the requested injunction. *See Ute Indian Tribe of the Uintah & Ouray Rsrv. v. Lawrence*, 22 F.4th 892, 899, 908 (10th Cir. 2022) (holding that one of the elements a plaintiff must show to be entitled to injunctive relief is that "it will suffer irreparable harm without the injunction"). Indeed, nowhere does Plaintiff allege that he has been or will be

harmed by the existence, contents, or correct application of these policies. (*See generally* Doc. 1.) Rather, he simply alleges that he was injured by Defendants' past improper implementation of them. (*Id.*) For these reasons, Plaintiff's requests for declaratory and injunctive relief should be dismissed as moot, and, with respect to his request for injunctive relief, for failure to state a claim.

## V.  CONCLUSION

For the reasons stated above, I RECOMMEND that Movants' Partial Motion to Dismiss Complaint for Violation of Civil Rights and for Qualified Immunity (Doc. 50) be GRANTED IN PART and DENIED IN PART as follows:

1.     The following claims should be DISMISSED WITH PREJUDICE:

   a.     Claim Five, including any supervisory liability and conspiracy claims asserted therein, against all NMCD Defendants;

   b.     Plaintiff's "Retaliatory Due Process" claims arising out of the alleged mishandling of his grievances and the alleged ban prohibiting mail between him and his fiancée, including any supervisory liability and conspiracy claims asserted therein, against all NMCD Defendants;

   c.     The parts of Claim Eight incorporating (1) the allegations in Claims One through Five, (2) the allegations in the "Retaliatory False Disciplinary" and "Retaliatory Threats to Personal Safety" sections of Claim Seven, and (3) the allegations in Plaintiff's "Retaliatory Due Process" claims listed in Paragraph 1(b), *supra*, including any supervisory liability and conspiracy claims asserted therein, against all NMCD Defendants;

   d.     All of Plaintiff's claims for money damages under 42 U.S.C. § 1983 against Defendants Madrid and Frazier;

2.     The following claims should be DISMISSED WITHOUT PREJUDICE:

a. Claims Two, Three, Four, and Six against all NMCD Defendants;

b. Plaintiff's "Retaliatory Due Process" claims arising out of the alleged mishandling of disciplinary proceedings against him, including any supervisory liability and conspiracy claims asserted therein, against all NMCD Defendants;

c. Plaintiff's Fourteenth Amendment "Retaliatory Due Process" claims arising out of the alleged ban prohibiting visitation between him and his fiancée, including any supervisory liability and conspiracy claims asserted therein, against all NMCD Defendants;

d. The parts of Claim Eight incorporating the allegations in Claim Six and the allegations in the "Retaliatory Due Process" claims listed in Paragraphs 2(b) and 2(c), *supra*, including any supervisory liability and conspiracy claims asserted therein, against all NMCD Defendants;

e. Plaintiff's claims for money damages under 42 U.S.C. § 1983 against Defendants Tafoya Lucero, Bean, and Baker, to the extent his claims against these Defendants have not been dismissed with prejudice in Paragraph 1, *supra*;

f. Plaintiff's claims for money damages under 42 U.S.C. § 1983 against the NMCD and the individual NMCD Defendants sued in their official capacity;

3. Plaintiff's requests for declaratory and injunctive relief should be DISMISSED AS MOOT, and, with respect to his request for injunctive relief, for failure to state a claim; and,

4. Plaintiff should be allowed 30 days to file a motion for leave to amend his Complaint to state a plausible claim as to:

a. His "Retaliatory Due Process" claims arising out of the alleged mishandling of disciplinary proceedings against him;

b.      His Fourteenth Amendment "Retaliatory Due Process" claims arising out of the alleged ban prohibiting visitation between him and his fiancée;

c.      The parts of Claim Eight incorporating the allegations in Claim Six and the allegations in the parts of Claim Seven listed in Paragraphs 4(a) and (b), *supra*; and,

d.      His claims for money damages under 42 U.S.C. § 1983 against Defendants Tafoya Lucero, Bean, and Baker, to the extent his claims against these Defendants have not been dismissed with prejudice in Paragraph 1, *supra*.

If the Court adopts these recommendations, Plaintiff's remaining claims will be:

1. All claims against Defendants Wexford Health Sources, Inc. and the Doe nurse;

2. Claim One ("Cruel & Unusual Punishment in Violation of the Eighth Amendment") for money damages under 42 U.S.C. § 1983 against Defendants Jaramillo, Garza, Newton, Martinez, Hernandez, Martin, Trujillo, Montoya, Boyd, Angel, J. McGehee, and Hatch in their individual capacities;

3. Plaintiff's First Amendment "Retaliatory Due Process" claims for money damages under 42 U.S.C. § 1983 against Defendants Jaramillo and Hatch in their individual capacities based on the alleged ban prohibiting visitation between Plaintiff and his fiancée; and,

4. All sections of Claim Seven, other than the section entitled "Retaliatory Due Process," for money damages under 42 U.S.C. § 1983 against Defendants Jaramillo, Garza, Newton, Martinez, Hernandez, Martin, Trujillo, Montoya, Boyd, Angel, J. McGehee, Rivera, Mize, Jackson, Cryer, A. McGehee, Bittinger, and Hatch in their individual capacities.

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**